

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00820-CR

Jose Isabel **MARTINEZ-HERNANDEZ**,
Appellant

v.

The **STATE** of Texas
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2012CRU-010D4
Honorable Oscar J. Hale Jr., Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Rebeca C. Martinez, Justice
            Patricia O. Alvarez, Justice
            Luz Elena D. Chapa, Justice

Delivered and Filed:  June 17, 2015

AFFIRMED

This appeal arises from the State's indictment alleging Appellant Jose Isabel Martinez-Hernandez committed aggravated sexual assault of an elderly individual and burglary of a habitation with intent to commit a felony therein.  The jury found Martinez-Hernandez guilty of both offenses and assessed punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice.  Martinez-Hernandez contends the trial court erred in denying his motions to suppress his statements and DNA test results.  Because Martinez-Hernandez's *Miranda* and Article 38.22 rights were not violated, and Martinez-Hernandez

consented to the collection of his DNA, we affirm the trial court's order denying Martinez-Hernandez's motions to suppress.

## BACKGROUND

### A.  Factual Background

On September 24, 2011, in the city of El Cenizo, Texas, a seventy-three year-old female[1] was viciously assaulted and raped at knife-point by an unknown perpetrator.  After the attack, the victim sought help from a friend and the offense was reported to the Webb County Sheriff's Department.

#### 1.  *Identification of Martinez-Hernandez*

The victim was able to provide a description of the man who assaulted and raped her, including a description of a tattoo on the perpetrator's chest.  Sergeant Sylvia Morales, the investigating officer, also secured information on a gold van parked outside the elderly victim's home on the day of the assault.

Sergeant Morales subsequently located the van parked on private property in El Cenizo and identified Appellant Jose Isabel Martinez-Hernandez as the vehicle's owner.  When questioned, the owner of the residence where the van was found told the officer that he purchased the van from Martinez-Hernandez. He provided Sergeant Morales with a copy of Martinez-Hernandez's identification card and she identified the man in the picture as Martinez-Hernandez.

The victim was presented with a photographic line-up, which included the photograph from Martinez-Hernandez's identification card, and identified Martinez-Hernandez as her rapist.

---

[1] Due to the nature of the offense, the victim's identity is withheld from this opinion.

Martinez-Hernandez's mother-in-law subsequently informed Sergeant Morales that Martinez-Hernandez was in México. Sergeant Morales provided Martinez-Hernandez's mother-in-law with contact information and requested that she have Martinez-Hernandez contact her.

### 2. *Martinez-Hernandez Returns to the United States for Interview*

As requested, Martinez-Hernandez called Sergeant Morales. She advised him that she was conducting an investigation and that she believed he possessed information about the case. Sergeant Morales requested Martinez-Hernandez meet her at the Lincoln-Juárez International Bridge[2] in order to "clear things up." Sergeant Morales arranged with the United States Customs and Border Protection office for Martinez-Hernandez to be released to her custody for purposes of an interview and then Martinez-Hernandez would be returned to USCBP office.

On October 4, 2011, Martinez-Hernandez traveled to Nuevo Laredo, México and on his arrival at the Lincoln-Juárez International Bridge, he called Sergeant Morales. She told him to start walking toward the American side of the bridge and she would meet him at the United States Customs and Border Protection office. Prior to Sergeant Morales's arrival at the USCBP offices, Martinez-Hernandez was processed and handcuffed by USCBP officers. Martinez-Hernandez was released to Sergeant Morales and her partner without the handcuffs.

Once in Sergeant Morales's custody, Martinez-Hernandez was again handcuffed and shackles were placed on his legs; Sergeant Morales opined this was for his own protection and the safety of the officers transporting Martinez-Hernandez. Sergeant Morales denied Martinez-Hernandez was under arrest at this time. To the contrary, Sergeant Morales asserted that she was only performing an investigation and, upon completing her investigation, she was responsible for ensuring Martinez-Hernandez's return to the USCBP port of entry.

---

[2] The Lincoln-Juárez International Bridge is a United States custom's port of entry between Nuevo Laredo, México and Laredo, Texas.

### 3. *Questioning at the Webb County Sheriff's Department*

Martinez-Hernandez was transported in a patrol car to the Webb County Sheriff Department's substation. Once there, Martinez-Hernandez was placed in an interview room which was guarded, at all times, by at least one deputy. Although the safety of officers was no longer a concern, Martinez-Hernandez remained handcuffed and shackled.

Several minutes after being escorted into the interview room, Sergeant Morales requested Martinez-Hernandez's handcuffs be removed because "he [was] going to need to write." Sergeant Morales then advised Martinez-Hernandez that she was conducting an investigation in which his name was mentioned. She further explained that "before asking any questions or whatever" she was required to read him his "rights." Sergeant Morales asked Martinez-Hernandez if he would speak with her; he nodded his head in agreement and then orally responded, "Yes." Immediately thereafter, Sergeant Morales asked Martinez-Hernandez for permission to take a DNA sample and a fingerprint exemplar. Martinez-Hernandez acknowledged the officer's explanation of the DNA test and affirmatively agreed to submit to DNA testing and fingerprinting. Sergeant Morales then asked Martinez-Hernandez to show her any tattoos that he may have and Martinez-Hernandez raised his shirt to reveal tattoos on his chest, left forearm, and hand.

After the DNA samples and the fingerprints were taken, Sergeant Morales informed Martinez-Hernandez of his rights against incrimination,

> [Y]ou've got the right to remain silent and not make any statements and any statement you make can be used against you . . . any statement you make can be used as evidence against you before a court of law . . . you've got the right to have an attorney . . . present . . . to advise you before or during the questioning in your trial . . . if you don't have the means to hire an attorney you've got the right that one be appointed for you to advise you before or during the questioning and you have the right to end this interview at any time . . . you understand your rights?

Martinez-Hernandez responded affirmatively and indicated that he would "like to talk" to Sergeant Morales.

Martinez-Hernandez began by telling Sergeant Morales that a friend advised him the police were looking for him in relation to an assault and rape. Sergeant Morales confirmed the basis of the investigation and further advised that the DNA was taken for a comparison to evidence collected in the rape of an elderly female. Martinez-Hernandez then proceeded to orally confess to the physical and sexual assault, providing specific details to Sergeant Morales.

Following his oral confession, Sergeant Morales requested a written statement. Martinez-Hernandez was provided with a form in Spanish containing the same warnings previously read by Sergeant Morales. Martinez-Hernandez was left alone in the interview room to write his statement. Martinez-Hernandez took his time to read the form and provide the requested information, including initialing next to each warning. Martinez-Hernandez then proceeded to write his statement in which he again confessed to the assault and rape in question.

After confessing, Martinez-Hernandez was charged with aggravated sexual assault and burglary of a habitation with intent to commit a felony therein and was processed by the Webb County Sheriff's Office. Martinez-Hernandez was then returned by Sergeant Morales to the USCBP office to be processed for expedited removal proceedings.

*4.    Questioning at the United States Customs and Border Protection Office*

As part of the expedited removal process, USCBP Officer Juana Alvarez again read Martinez-Hernandez his *Miranda* rights in Spanish. Martinez-Hernandez again indicated that he understood his rights and signed a document confirming and waiving the same. Martinez-Hernandez declined the services of an attorney and agreed to voluntarily answer Officer Alvarez's questions. Once again, Martinez-Hernandez confessed to committing an assault and rape on September 24, 2011, in El Cenizo, Texas.

At all times while being questioned and processed by USCBP, Martinez-Hernandez remained handcuffed. Martinez-Hernandez was subsequently released back to Webb County

Sheriff's Department's custody and was transported to the Webb County jail. Shortly thereafter, Martinez-Hernandez was indicted for aggravated sexual assault of an elderly person and for burglary of a habitation with the intent to commit a felony therein.

## MOTIONS TO SUPPRESS

Alleging violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments and the Texas Constitution, Martinez-Hernandez moved to suppress (1) his oral and written statements to the Webb County Sheriff's Department, (2) the video-recorded interview at the Webb County Sheriff's Office, (3) the DNA test results, (4) any fingerprint analysis based on fingerprints taken at the Webb County Sheriff's Office, and (5) the photo line-up identification by the victim. After an evidentiary hearing, the court denied all motions.

The trial court made the following oral findings of fact and conclusions of law:

> The court finds the statement was voluntarily made. *Miranda* rights were read to the defendant. The defendant voluntarily traveled hundred[s] of miles from México specifically with the intent to provide a statement to clarify accusations. Basing this on those facts, the Court finds there was [sic] voluntarily made statement. The defendant was not in custody, although there were some measures taken for safety purposes.
>
> The defendant gave consent to taking a DNA sample and/or the saliva sample, sample found by taking the evidence. Identification of the defendant was not as a result of suggested questioning; Court's findings after the testimony presented.
>
> Those are my findings and conclusions of law.

The case against Martinez-Hernandez proceeded to trial where the video recording, its translation, Martinez-Hernandez's statements, and DNA test results were admitted into evidence. A jury found Martinez-Hernandez guilty on all counts, and assessed punishment at life imprisonment. This appeal ensued.

## ARGUMENTS OF THE PARTIES

On appeal, Martinez-Hernandez contends the trial court erred in denying his motion to suppress (1) oral, written, and recorded statements because the statements were taken while

Martinez-Hernandez was subjected to custodial interrogation and without the proper *Miranda* warnings, and (2) the DNA sample was taken while Martinez-Hernandez was subjected to custodial interrogation and without having first received *Miranda* rights.

The State argues Martinez-Hernandez was not in custody at the Webb County Sheriff's Office and his statements were voluntary. The State likewise contends Martinez-Hernandez gave his consent to take a DNA sample and, therefore, no constitutional violations occurred.[3]

## STANDARD OF REVIEW

The parties disagree on the applicable standard of review. The State asserts the standard is abuse of discretion; Martinez-Hernandez contends a de novo standard applies.

A bifurcated standard applies when we review a trial court's ruling on a motion to suppress based on an alleged *Miranda* violation. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006); *see also State v. Moore*, Nos. 04–11–00636–CR, 04–11–00637–CR, 2013 WL 520047, at *3 (Tex. App.—San Antonio Feb. 13, 2013, pet. ref'd) (op. on reh'g) (mem. op., not designated for publication). An appellate court must first afford "almost total deference [to] the trial judge's rulings on questions of historical fact and on application of law to fact questions that turn upon the credibility and demeanor, and it reviews *de novo* the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor." *Alford*, 358 S.W.3d at 652–53; (citing *Ripkowski v. State*, 61 S.W.3d 378, 381–82 (Tex. Crim. App. 2001)); *accord State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013).

---

[3] In its cross-appeal, the State asserts the appeal should be abated and the cause remanded for entry of further written findings of fact as to the voluntariness of Martinez-Hernandez's confession. Because we affirm the trial court's order, we need not address this issue.

A determination on when custody attaches and whether custodial questioning constitutes interrogation under *Miranda* is a mixed question of law and fact. *Saenz*, 411 S.W.3d at 494–95; *Alford*, 358 S.W.3d at 653. When, as in the present case, the resolution of an issue does not rest on credibility and demeanor, "whether a set of historical facts constitutes custodial interrogation under the Fifth Amendment is subject to *de novo* review because that is an issue of law: it requires application of legal principles to a specific set of facts." *Alford*, 358 S.W.3d at 653 (citing *Ripkowski*, 61 S.W.3d at 381–82).

MOTION TO SUPPRESS STATEMENTS

We first address whether Martinez-Hernandez was under custodial interrogation at the time of his oral and written confessions to the Webb County Sheriff's Department and whether he was properly warned of his rights under *Miranda* and article 38.22 of the Texas Code of Criminal Procedure.

A.      **Arguments of the Parties**

Martinez-Hernandez argues the trial court erred in denying his motion to suppress the oral statements, the recorded statements, and the written statements in violation of his rights under the Fifth Amendment, *Miranda*, and article 38.22 of the Texas Code of Criminal Procedure. In support, Martinez-Hernandez argues that when he confessed, he was subjected to custodial interrogation and any warnings given by Sergeant Morales were defective because Sergeant Morales failed to inform Martinez-Hernandez of his right to have a lawyer present to advise him prior to and during *any questioning*. Martinez-Hernandez concludes that Sergeant Morales's defective warning prevented him from making a knowing, voluntary, and intelligent waiver of his rights and that any statements obtained thereafter were tainted.

The State counters that Martinez-Hernandez was not in custody during Sergeant Morales's interview because the interview began at Martinez-Hernandez's own bidding. Alternatively, the

State argues, even if Martinez-Hernandez was in custody, Sergeant Morales read the warnings in a manner that was substantially in compliance with article 38.22 and *Miranda*. Additionally, the State contends that no harm resulted because Martinez-Hernandez provided the same information to the USCBP officers and the USCBP statements were separate and distinct from any potential taint caused by any improper warnings provided by Sergeant Morales.

**B.      Applicable Law**

*Miranda* warnings are required when a person is subjected to custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966); TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (West Supp. 2014) (requiring warnings only when interrogation is custodial); *see also Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007) (explaining *Miranda* warnings "safeguard an uncounseled individual's constitutional privilege against self-incrimination during custodial interrogation"). "[C]ustodial interrogation . . . mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444; *accord Herrera*, 241 S.W.3d at 525. Thus, the concerns raised by failing to comply with *Miranda* only arise when the individual is subject to both (1) custody by a law enforcement officer and (2) an interrogation. *Miranda*, 384 U.S. at 444; *accord Warren v. State*, 377 S.W.3d 9, 17 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

*1.      When is a Person in Custody?*

A person may be in custody under any of these four general situations:

(1) when the suspect is physically deprived of his freedom in any significant way, (2) when a law enforcement officer tells the suspect he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect he is free to leave.

*Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996); *accord Saenz*, 411 S.W.3d at 496. When evaluating situations one through three, "the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention." *Dowthitt*, 931 S.W.2d at 255 (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)). If a person voluntarily agrees to accompany law enforcement officers to a different location to answer questions about an incident, the officer advises the person that he will be handcuffed for officer safety during transport, he is handcuffed during transport, but the handcuffs are removed on arrival at the location, this alone does not invoke custody. *Turner v. State*, 252 S.W.3d 571, 580–81 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Dancy v. State*, 728 S.W.2d 772, 778–79 (Tex. Crim. App. 1987)). But if after transport, the person continues to be physically restrained and "'a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest,'" he is in custody. *See Herrera*, 241 S.W.3d at 525 (quoting *Dowthitt*, 931 S.W.2d at 255).

### 2. What Constitutes Interrogation?

In addition to custody, before warnings are required, there must be interrogation of the suspect by an investigating officer. *See Miranda*, 384 U.S. at 444; *Warren*, 377 S.W.3d at 17. Interrogation arises when "express questioning as well as words or actions by the police, other than those normally attendant to arrest and custody, that police 'should know are reasonably likely to elicit an incriminating response.'" *State v. Ortiz*, 346 S.W.3d 127, 134 (Tex. App.—Amarillo 2011) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)), *aff'd*, 382 S.W.3d 367 (Tex. Crim. App. 2012). "The term 'incriminating response' refers to any response that the prosecution may seek to introduce at trial." *Id.* (quoting *Innis*, 446 U.S. at 301 n.5). It applies to "any inculpatory or exculpatory statements that the prosecution might wish to introduce." *Jones v.*

*State*, 795 S.W.2d 171, 176 n.7 (Tex. Crim. App. 1990) (citing *Innis*, 446 U.S. at 301 n.5); *accord*

*Herrera*, 241 S.W.3d at 535 (Johnson, J., dissenting).

We note, however, that police practices "seek[ing] only physical evidence, not testimonial

confessions of guilt" are excluded from the scope of incriminating responses. *Jones*, 795 S.W.2d

at 175. "[R]outine inquiries, questions incident to booking, broad general questions such as 'what

happened' on arrival at the scene of a crime, and questions mandated by public safety concerns are

not interrogation." *Ortiz*, 346 S.W.3d at 134–35 (citing *Jones*, 795 S.W.2d at 174 n.3).

### 3. Required Warnings

*Miranda* prescribes four warnings that must be provided prior to any custodial

interrogation:

> He must be warned prior to any questioning that he has the right to remain silent,
> that anything he says can be used against him in a court of law, that he has the right
> to the presence of an attorney, and that if he cannot afford an attorney one will be
> appointed for him prior to any questioning if he so desires. Opportunity to exercise
> these rights must be afforded to him throughout the interrogation. After such
> warnings have been given, and such opportunity afforded him, the individual may
> knowingly and intelligently waive these rights and agree to answer questions or
> make a statement. But unless and until such warnings and waiver are demonstrated
> by the prosecution at trial, no evidence obtained as a result of interrogation can be
> used against him.

*Miranda*, 384 U.S. at 479; *accord Kupferer v. State*, 408 S.W.3d 485, 489 (Tex. App.—Houston

[1st Dist.] 2013, pet. ref'd).

Article 38.22 of the Texas Code of Criminal Procedure incorporates the *Miranda* warnings

with additional procedural safeguards. TEX. CODE CRIM. PROC. ANN. art. 38.22; *Henson v. State*,

440 S.W.3d 732, 742 (Tex. App.—Austin 2013, no pet.). Section 2 of article 38.22 bars admission

of a defendant's written statement unless, inter alia, the statement's face shows the defendant has

been warned of the following:

> (1) he has the right to remain silent and not make any statement at all and that any
> statement he makes may be used against him at his trial;

(2)  any statement he makes may be used as evidence against him in court;

(3)  he has the right to have a lawyer present to advise him prior to and during any questioning;

(4)  if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5)  he has the right to terminate the interview at any time . . . .

TEX. CODE CRIM. PROC. ANN. art. 38.22 § 2; *accord Herrera*, 241 S.W.3d at 526; *see Dowthitt*, 931 S.W.2d at 257–58. Courts have repeatedly held that there is not one singularly correct form of the required warnings; to the contrary, substantial compliance with article 38.22 and *Miranda* is sufficient. *E.g.*, *Bible v. State*, 162 S.W.3d 234, 240–41 (Tex. Crim. App. 2005); *see also Florida v. Powell*, 559 U.S. 50, 60 (2010). Because an incomplete or incorrect warning may be sufficient if it substantially complies with article 38.22 and *Miranda*, Texas courts look to whether any alleged defect in the warning "falls within the bounds of an incomplete or incorrect warning, rather than one which is completely omitted." *Rutherford v. State*, 129 S.W.3d 221, 224–25 (Tex. App.—Dallas 2004, no pet.); *see also Nonn v. State*, 41 S.W.3d 677, 679 (Tex. Crim. App. 2001) (reiterating that warnings need only "substantially comply" with article 38.22).

   *4.     Knowing, Intelligent, and Voluntary Waiver*

   The State must prove by a preponderance of the evidence that any waiver was knowing, intelligent, and voluntary under *Miranda* and article 38.22. *See Miranda*, 384 U.S. at 475; *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011); *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). Courts look to whether the voluntary relinquishment was "'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Joseph*, 309 S.W.3d at 25 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Additionally, the waiver must be "'made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* (quoting *Moran*, 475 U.S. at 421). Only when the totality of the circumstances surrounding the interrogation, including the defendant's experience,

background, and conduct, show an "uncoerced choice" was made with full awareness of the nature of the right and the consequences of abandoning that right may a court properly conclude that the *Miranda* rights were knowingly, intelligently, and voluntarily waived.[4] *Id.* (quoting *Moran*, 475 U.S. at 421); *see also Coffey v. State*, 435 S.W.3d 834, 842 (Tex. App.—Texarkana 2014, pet. ref'd) ("Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court may properly conclude that the *Miranda* rights have been waived.").

## C.    Analysis

We first address the issue of custody and then focus our inquiry on whether the line of questioning to which Martinez-Hernandez was subjected, prior to being given any warnings, constituted interrogation. We then turn to whether the warnings were sufficient and whether Martinez-Hernandez waived his rights.

### 1.    *Was Martinez-Hernandez in Custody?*

A review of the totality of the objective circumstances surrounding Martinez-Hernandez's detention shows that at all times of his detention, Martinez-Hernandez was physically deprived of his freedom in a significant way. Although he voluntarily traveled to the United States to answer Sergeant Morales's questions, Martinez-Hernandez was not a resident and did not possess entry documentation. Therefore, per USCBP procedures, he was immediately handcuffed. Notwithstanding the USCBP handcuffs were removed when Sergeant Morales took custody of Martinez-Hernandez, the Webb County Sheriff's Department immediately replaced the handcuffs

---

[4] Martinez-Hernandez did not argue that the totality of the circumstances surrounding his interrogation fail to show any waiver was made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Therefore, we do not address the issue. *See* TEX. R. APP. P. 38.1(i) (briefing waiver); *cf. Nickerson v. State*, 312 S.W.3d 250, 258 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (deciding briefing waiver did not apply because appellant "cited to the record and provided [the] court with authority to support his [argument]").

and added leg shackles. The evidence supports that (1) these precautions were for the safety of both the officer and Martinez-Hernandez during his transport to the Webb County Sheriff's station and (2) Sergeant Morales was under the obligation to return Martinez-Hernandez to the USCBP offices.

At the Webb County Sheriff's station, his handcuffs were removed, but the shackles remained on his legs at all times. Martinez-Hernandez was not allowed to leave the interview room alone. He was the only non-law enforcement person in the interview room, and an armed, uniformed guard stood at the room's only doorway at all times. For these reasons, we find that a reasonable person in Martinez-Hernandez's situation would believe his freedom of movement was restrained and, thus, Martinez-Hernandez was in custody for purposes of *Miranda* and article 38.22.[5] *See Herrera*, 241 S.W.3d at 525; *Dowthitt*, 931 S.W.2d at 254–55.

*2.      Was Martinez-Hernandez Timely Warned?*

Although in custody, for *Miranda* and article 38.22 to apply, Martinez-Hernandez also had to be subjected to interrogation. Reading Martinez-Hernandez's brief liberally, we first address the line of questioning before Sergeant Morales gave Martinez-Hernandez the required warnings.

The Webb County Sheriff Department's line of questioning before the warnings were conveyed to Martinez-Hernandez was limited to routine questions and no questions elicited incriminating information. *See Jones*, 795 S.W.2d at 174. Specifically, the inquiries included questions such as confirming Martinez-Hernandez's identification and residence, the officer's request for a fingerprint exemplar, an explanation of how a DNA sample is taken, whether Martinez-Hernandez had any tattoos, and whether he wanted a glass of water or to use the restroom.

---

[5] We do not decide whether Martinez-Hernandez was in custody while at the USCBP port of entry.

Because the questions were either routine questions incident to booking or they sought physical evidence, and not testimonial confessions of guilt, the questions did not elicit incriminating testimonial responses. *See Jones*, 795 S.W.2d at 174; *Ortiz*, 346 S.W.3d at 134–35. Therefore, the line of questioning by Sergeant Morales before the warnings does not constitute interrogation for *Miranda* and article 38.22 purposes.

We turn now to whether the warnings were adequate.

*3.       Were the* Miranda *and Article 38.22 Warnings Adequate?*

Martinez-Hernandez contends that any statement given after Sergeant Morales's warnings should be suppressed because the warnings were deficient. Consequently, Martinez-Hernandez contends his waiver of rights was ineffective. We disagree.

Sergeant Morales gave Martinez-Hernandez the following verbal warnings:

> . . . [Y]ou've got the right to remain silent and not make any statements and any statement you make can be used against you . . . any statement you make can be used as evidence against you before a court of law . . . you've got the right to have an attorney . . . present to advise you before or during the questioning in your trial . . . if you don't have the means to hire an attorney you've got the right that one be appointed for you to advise you before or during the questioning and you have the right to end this interview at any time . . . you understand your rights?

Following these verbal warnings, Sergeant Morales began asking Martinez-Hernandez questions pertaining to the assault and rape. The parties do not dispute that this line of questioning constituted interrogation.

After Martinez-Hernandez confessed to the assault and rape, Sergeant Morales provided Martinez-Hernandez with a form she identified as a "Spanish Voluntary Written Statement." This form contained the same warnings in Spanish as those orally given by Sergeant Morales:[6]

---

[6] The translation of these warnings are part of Sergeant Morales's trial testimony, which was admitted into evidence without objection. Because the record does not contain a certified written translation of the "Spanish Voluntary Written Statement," we rely only on the trial translation.

1.  I have the right to remain silent and not make any statement and whichever statement I may make, can be used against me.

2.  Any statement that I may make may be used against me in a courtroom as evidence.

3.  I have the right to have an attorney present during and at the time of the interrogation in a trial.

4.  I don't have—if I don't have the right or the means—if I don't have the means to hire an attorney, I have the right to be assigned to one to advise me during the interrogations.

5.  I have the right to finish with this interview at any time.

Martinez-Hernandez argues the oral and written warnings were deficient because they failed to advise him of his right to counsel before and during Sergeant Morales's questioning and were limited to the right to have counsel present at trial. In support, Martinez-Hernandez relies on *Coffey v. State*, 435 S.W.3d 834 (Tex. App.—Texarkana 2014, pet. ref'd). In *Coffey*, the court concluded the warnings given to the defendant did not comply with *Miranda* and article 38.22 because the right to counsel warning failed to inform Coffey of the "'right to have a lawyer present to advise him *prior to and during any questioning*.'" *Id.* (quoting article 38.22 and concluding that a warning omitting the right to the assistance of counsel prior to and during any questioning was ineffective). But the constitutional requirement pertaining to *Miranda* warnings relates to the substance of the warnings rather than the specific wording. *Id.* at 841 (explaining that as long as the substance of the warnings are adequately communicated, "'the failure to give the warnings precisely as set forth in *Miranda* does not invalidate a subsequent confession'" (quoting *Hutchison v. State*, 424 S.W.3d 164, 175 n.7 (Tex. App.—Texarkana 2014, no pet.))).

Here, unlike *Coffey*, the warnings read by Sergeant Morales advised Martinez-Hernandez of his right to have an attorney present to advise him before or during questioning in his trial and have an attorney appointed to advise him *before or during the questioning*. *Cf. id.* at 842. Further, based on the repeated warnings given by Sergeant Morales, we conclude the combination

effectively communicated to Martinez-Hernandez his right to have an attorney present before and during the questioning and his right to stop the interview at any time. *See id.* Thus, Martinez-Hernandez was afforded his *Miranda* and article 38.22 rights. *See id.*

We next consider the issue of waiver.

*4.     Did Martinez-Hernandez Waive His Rights?*

Martinez-Hernandez asserts three grounds to show the State failed to meet its burden to show his statements were given voluntarily: he was in a "coercive environment" and he felt obligated to respond to Sergeant Morales's questions, the warnings were defective and he could not have voluntarily waived rights he did not know he had, and the totality of circumstances show his statements were not made voluntarily. We address each ground in turn.

a.     <u>Coercive Environment</u>

Martinez-Hernandez contends that his twenty-hour trip to the U.S. border, his detention and physical restraints by USCBP, and his physical restraints and custodial supervision in the Webb County Sheriff's facilities show he was in a coercive environment.

We agree that Martinez-Hernandez was in custody throughout his stay at the Webb County Sheriff's station. But Martinez-Hernandez does not show how his voluntary decision to travel to the United States to answer law enforcement's questions about an incident changes the nature of his custody into a coercive environment. *Contra Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995) (noting that it is "'[coercive] *police conduct* causally related to the confession'" that makes a statement involuntary (alteration in original) (emphasis added) (quoting *Colorado v. Connelly*, 479 U.S. 157, 164 (1986))); *accord Lane v. State*, 933 S.W.2d 504, 511–12 (Tex. Crim. App. 1996) (same).

In reviewing an allegation of coercive police conduct to determine whether a defendant's will was overborne such that his statement was involuntary, we consider factors such as "length

of detention, incommunicado or prolonged interrogation, denying a family access to a defendant, refusing a defendant's request to telephone a lawyer or family, and physical brutality." *Armstrong v. State*, 718 S.W.2d 686, 693 (Tex. Crim. App. 1985), *overruled on other grounds by Mosely v. State*, 983 S.W.2d 249, 264 n.18 (Tex. Crim. App. 1998).

Here, the video recording shows Martinez-Hernandez was brought into the interview room, and before he received his *Miranda* or Article 38.22 warnings, he gave his consent to disclose his tattoos and to provide fingerprint and DNA samples. During this time when the officers were seeking physical evidence, Martinez-Hernandez was not asked any questions seeking to elicit an incriminating response. *See Ortiz*, 346 S.W.3d at 134–35 (citing *Jones*, 795 S.W.2d at 174 n.3).

Martinez-Hernandez was able to understand and comply with the instructions for each procedure, and these matters were concluded in just under forty minutes. At that time, Sergeant Morales and Martinez-Hernandez were alone in the interview room and both appeared to be seated comfortably. Morales read Martinez-Hernandez his *Miranda* and article 38.22 rights, another officer briefly entered the room to bring Martinez-Hernandez a cup of water, and Martinez-Hernandez agreed to answer Morales's questions. Morales questioned Martinez-Hernandez with a matter-of-fact tone and did not threaten or use any physical force. Within approximately ten minutes after Sergeant Morales began questioning him, Martinez-Hernandez began admitting he sexually assaulted the victim. Martinez-Hernandez never asked to terminate the interrogation and did not ask for an attorney before answering any questions. The record does not show Martinez-Hernandez was denied access to communicate with a family member or an attorney. *Cf. Lane*, 933 S.W.2d at 512 (coercive factors); *Armstrong*, 718 S.W.2d at 693 (same).

Before he provided the written statement, Morales explained the form to Martinez-Hernandez and then left him alone in the room. Martinez-Hernandez read the form, initialed it in the appropriate places, and wrote his statement without assistance or direction.

The length of the interview, the tone of Morales's questions, the time before Morales began confessing, the officers' care for Martinez-Hernandez's physical needs, and his ability to understand and respond to verbal and written questions and instructions are all evidence showing an absence of coercive police conduct. *See Lane*, 933 S.W.2d at 512; *Armstrong*, 718 S.W.2d at 693.

### b. Allegedly Inadequate Warnings

Martinez-Hernandez also argues his statements could not have been given voluntarily because his warnings were inadequate or defective. We have already concluded that the warnings were adequate to protect Martinez-Hernandez's *Miranda* and Article 38.22 rights, and we need not repeat our analysis here.

### c. Totality of the Circumstances

In his final ground, Martinez-Hernandez argues the totality of the circumstances show his statements were not made voluntarily. He argues that his long drive, his physical restraints, and the alleged failure to advise him he could have an attorney present with him prior to and during his custodial interrogation are circumstances that show his statements were not made voluntarily. Martinez-Hernandez was not asked questions seeking to elicit an incriminating response before he was warned. *See Jones*, 795 S.W.2d at 175. He was not subject to coercive police conduct causally related to his statements. *See Lane*, 933 S.W.2d at 512; *Alvarado*, 912 S.W.2d at 211. And the warnings afforded him his *Miranda* and Article 38.22 rights. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22; *Miranda*, 384 U.S. at 475.

## D. Denial of Motion to Suppress Statements

Before Sergeant Morales verbally advised Martinez-Hernandez of his *Miranda* and Article 38.22 rights, he was in custody but was not interrogated. After he was warned, Martinez-Hernandez was subjected to custodial interrogation by Sergeant Morales. The warnings Martinez-

Hernandez received preserved his *Miranda* and Article 38.22 rights. Nevertheless, Martinez-Hernandez voluntarily, knowingly, and intelligently waived those rights. *See Coffey*, 435 S.W.3d at 842. Therefore, the trial court did not err in denying Martinez-Hernandez's motion to suppress any pre- or post-warning statements given to the Webb County Sheriff's Office.[7]

Next, we address the motion to suppress any DNA evidence.

### MOTION TO SUPPRESS DNA EVIDENCE

We next address whether the DNA sample taken by the Webb County Sheriff's Department violated Martinez-Hernandez's Fourth Amendment rights.

### A.     Parties' Arguments

Martinez-Hernandez argues the trial court erred in not suppressing the DNA evidence because the DNA samples were not voluntarily given. He argues they were taken while he was unlawfully seized, in custody, and his submission to authority was not his voluntary consent. He contends that as a consequence, his Fourth and Fourteenth Amendments were violated.

The State argues that the taking of buccal swab DNA samples did not violate the Fourth Amendment, and even if it did, Martinez-Hernandez cannot show constitutional harm because of his subsequent confession to USCBP.

### B.     Applicable Law

If the State seeks to take a DNA sample from a person, it does not violate the person's Fourth Amendment right to be free from an unreasonable search if it first obtains the person's voluntary consent. *See Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012); *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). "In order to be valid, the consent must 'not

---

[7] In two sentences in his brief, Martinez-Hernandez acknowledges he "does not address the constitutionality of the oral and written statements provided to customs agents," but asks this court to exclude his statements to USCBP based on the "fruit of the poisonous tree" doctrine. Because we determine the statements to the Webb County Sheriff's Department were admissible, this issue is moot.

be coerced, by explicit or implicit means, by implied threat or covert force.'" *Carmouche*, 10 S.W.3d at 331(quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973)). If the defendant challenges the voluntariness of the consent, the State has the burden to prove "by clear and convincing evidence that the consent was freely given." *Id.*; *accord Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012). The defendant's "acquiescence to a claim of lawful authority" is not voluntary consent, *Paulus v. State*, 633 S.W.2d 827, 850 (Tex. Crim. App. [Panel Op.] 1981), but "[t]he ultimate question is whether the suspect's will was overborne" by the officer's actions. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).

## C.     Standard of Review

In reviewing the trial court's denial of Martinez-Hernandez's motion to suppress the DNA evidence, we apply the bifurcated *Guzman* standard as described above. *See Alford*, 358 S.W.3d at 652–53 (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We give "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor," but we review de novo questions of law and mixed questions of law and fact not turning on credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We examine the voluntariness of consent based on the "totality of the circumstances from the point of view of an objectively reasonable person, including words, actions, or circumstantial evidence." *Tucker*, 369 S.W.3d at 185; *see Creager*, 952 S.W.2d at 856. "We will sustain the trial judge's ruling if that ruling is reasonably supported by the record and is correct on any theory of law applicable to the case." *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011) (internal quotation marks omitted); *accord Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006).

**D.** **Analysis**

The trial court found that Martinez-Hernandez consented to providing the DNA sample, and we give great deference to its findings such as this that turn on credibility and demeanor if they are supported by the evidence. *See Weaver*, 349 S.W.3d at 525; *Guzman*, 955 S.W.2d at 89. The video recording shows that, before he was warned but while he was shackled and in custody, Martinez-Hernandez was asked to give a DNA sample. He was asked in Spanish by Sergeant Morales and the other deputy, and both used non-threatening and low key voices. Neither officer told Martinez-Hernandez that he was obligated to comply or that he could not refuse the request for a sample. The recording does not show that Martinez-Hernandez was threatened, that he was subjected to coercion or duress by Sergeant Morales or the other deputy, or that he indicated he was unwilling to give the sample. The translated statement further shows that Martinez-Hernandez understood what a DNA test involved, specifically that the officer was collecting a scrape of saliva, and not a sample of blood.

**E.** **Denial of Motion to Suppress DNA**

Having reviewed the totality of the circumstances, we conclude the trial court's determination that Martinez-Hernandez voluntarily consented to the DNA test is supported by the record. We, therefore, conclude the trial court did not err in its determination that Martinez-Hernandez freely and voluntarily consented to provide a DNA sample.

### CONCLUSION

On his arrival at the Webb County Sheriff's office, Martinez-Hernandez was in custody. The oral and written warnings given to Martinez-Hernandez were adequate and timely because the officers did not seek to elicit incriminating responses before Martinez-Hernandez was warned. Therefore, the trial court did not err when it denied Martinez-Hernandez's motion to suppress his oral, written, and recorded statements at the Webb County Sheriff's office.

We also conclude the record supports the trial court's determination that Martinez-Hernandez voluntarily consented to the buccal swipe for DNA testing. Therefore, we will not disturb the trial court's ruling denying the motion to suppress the DNA evidence.

The trial court's judgment is affirmed.

Patricia O. Alvarez, Justice

PUBLISH