

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00291-CR

The **STATE** of Texas,
Appellant

v.

Richard Michael **DONOHOO**,
Appellee

From the County Court at Law No. 8, Bexar County, Texas
Trial Court No. 453259
Honorable Celeste Brown, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice
Dissenting Opinion by: Rebeca C. Martinez, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  June 22, 2016

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

The State charged Richard Michael Donohoo with operating a motor vehicle in a public place while intoxicated with a blood-alcohol concentration of 0.15 or higher. Donohoo filed a motion to suppress, alleging he was arrested without a warrant in violation of article 14.01 of the Texas Code of Criminal Procedure and was thereafter subjected to "custodial interrogation without proper Miranda warnings, field sobriety testing, transport to the Magistrate's Office for intoxilyzer testing, and follow-up booking procedures." After a hearing, the trial court granted Donohoo's motion "in all respects." The trial court's order incorporated by reference its oral findings of fact

and conclusions of law from the hearing. We abated the case for the trial court to make additional findings of fact and conclusions of law. We affirm the trial court's order in part and reverse and remand in part.

## BACKGROUND

We summarize the trial court's findings of fact and conclusions of law as follows: Around 8:45 p.m. on March 9, 2014, officers of the San Antonio Police Department received a call that a vehicle had struck a light pole. The unidentified caller stated she followed the car to an apartment complex located on Huebner Road. The caller did not give a description of the driver, speak to the officers conducting the investigation, or maintain a view of the vehicle once it entered the gated apartment complex. Approximately forty-five minutes elapsed between the time the accident was reported and the time the police officers made contact with Donohoo.

Officer Madiano knocked on Donohoo's apartment front door and, upon Donohoo opening it, Officer Madiano told Donohoo his car was about to be towed. Donohoo, "after being coerced outside under the guise of the vehicle not having a handicap placard, admit[ted] to driving a couple of hours prior." Donohoo stated the damage to his vehicle occurred two weeks prior and that he was unaware of any new damage. Officer Madiano asked Donohoo to come outside and Donohoo "request[ed] to put pants on." Donohoo stated he did not remember hitting anything with his car. After Donohoo left his home, the officers showed him the damage to his car. Donohoo asked to go back inside less than three minutes after he was "told" to go outside. Officer Madiano told Donohoo, "No, I want you to stay out here 'for a sec,' and look at the damages a while." Officer Madiano then called Officer Travis Gourley to come and conduct field sobriety tests.

Officer Gourley testified that Donohoo's disorderly clothing was a clue of intoxication, but Donohoo had asked to put on clothes after being awakened and asked to leave his home. Donohoo stated he was tired. Officer Gourley conducted the Horizontal Gaze Nystagmus test and asked

several questions "designed to elicit incriminating responses." Donohoo admitted he drank three beverages from 5:00 to 8:30 p.m. He also admitted he drove his vehicle, but stated he was not aware of any accident occurring that night. Following the field sobriety test, Donohoo was placed under arrest.

The trial court concluded Donohoo's home was not a "suspicious place" under Texas Code of Criminal Procedure article 14.03(a)(1)'s exception to the warrant requirement for an arrest. It further "conclude[d] that Donohoo was detained when he was asked to leave his home." When Donohoo was detained, the officers lacked reasonable suspicion to support a detention for driving while intoxicated. Donohoo was never informed that he was free to leave and "in fact, he was told the opposite." "[Donohoo] was clearly detained at the point he leaves his home. He requested to return to his home and was denied that request. A reasonable person would not believe they were free to leave when an officer says 'No, I want you to stay here . . . .'" The presence of four police officers at various points throughout the interaction with Donohoo would cause a reasonable person to believe his freedom of movement had been restricted.

The trial court further concluded Donohoo's statements were not voluntarily made under voluntary conditions. In addressing whether Donohoo was in custody, the trial court concluded that a reasonable person would not have felt free to leave because (1) Donohoo was detained when he left his home; (2) the officers prohibited Donohoo from going back into his home, and (3) four officers were present throughout the interaction with Donohoo. The trial court found Donohoo was not given his *Miranda* warnings until he was informed he was under arrest at 10:32:50 p.m.

The trial court clarified that its order suppresses "the officers' testimony, the video, and the results of the Standardized Field Sobriety Test." To understand what evidence was suppressed, we reviewed the record to discern what "video" the trial court referred to in its findings of fact and conclusions of law. The record contains three electronic files on which there are audio-video

recordings from the time that the officers first arrived at the apartment complex until after Donohoo was handcuffed and informed he was under arrest. The three files contained audio-video recordings of different parts of the officers' interactions with Donohoo.

The first audio-video file contains an audio recording of a discussion when the two officers went to Donohoo's home, but the officers and Donohoo cannot be seen in the video. Before Donohoo stated he would come outside, the two officers talked to Donohoo about whether he was drinking and driving earlier that evening. Donohoo then left his home and the officers showed Donohoo the damage to the side of his vehicle. Donohoo and one of the officers had another conversation about whether Donohoo was drinking and driving earlier that evening. When an officer asked for his identification, Donohoo asked to go back inside. The officer then stated, "No, I want you to stay out here 'for a sec,' and look at the damages a while." An officer and Donohoo continued to discuss whether Donohoo was drinking and driving. The audio on the first file was then muted.

On the second audio-video file, an officer and Donohoo can be seen standing in the parking lot. Donohoo stated he was cold. When an officer asked Donohoo if he wanted to get a jacket, Donohoo invited the officers into his home where they continued their conversation. Two more officers, including Officer Gourley, arrived and Donohoo and the other two officers came out to the parking lot. The audio on the second file was then muted. The third file shows Donohoo coming out of his home with an officer. Officer Gourley and Donohoo discussed what happened earlier that evening and whether Donohoo was drinking and driving. Officer Gourley then conducted a horizontal-gaze-nystagmus (HGN) test. Officer Gourley told Donohoo that he believed Donohoo was drinking and driving, informed Donohoo that he was placing him under arrest, and then placed handcuffs on Donohoo. Donohoo was thereafter given his *Miranda* warnings. The third audio-video file continues for approximately forty more minutes.

The State appeals, arguing the trial court erred by granting Donohoo's motion to suppress. The State supplemented its briefing to address the trial court's additional findings and conclusions regarding whether and when Donohoo was in custody under *Miranda v. Arizona*, 384 U.S. 436 (1966).

### STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We review a trial court's conclusions of law de novo. *Id.* at 328. If a trial court's fact findings are supported by the record or are based on evaluation of witness credibility and demeanor, we should afford them almost total deference. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). "The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). The trial court "is entitled to believe or disbelieve all or part of the witness's testimony—even if that testimony is uncontroverted—because he has the opportunity to observe the witness's demeanor and appearance." *Id.* "If the trial judge makes express findings of fact, we view the evidence in the light most favorable to his ruling and determine whether the evidence supports these factual findings." *Id.* "We will sustain the trial court's ruling if that ruling is 'reasonably supported by the record and is correct on any theory of law applicable to the case.'" *Id.* at 447-48 (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). However, we cannot blind ourselves to indisputable facts shown by video recordings that contradict the trial court's findings. *See Carmouche*, 10 S.W.3d at 332.

### ANALYSIS

The trial court concluded Donohoo was detained without reasonable suspicion "when he was asked to leave his home." The trial court also concluded that the interaction became a custodial

interrogation without proper *Miranda* warnings when his request to go back inside his home was denied and when four officers were present. The trial court also concluded that Donohoo was unlawfully arrested without a warrant after the HGN test because the officers lacked probable cause and Donohoo was not found in a "suspicious place."

The State contends the officers' encounter with Donohoo was consensual and, alternatively, the officers had reasonable suspicion to detain Donohoo. The State also argues the officers had probable cause to arrest Donohoo and that article 14.01's "suspicious place" exception to the prohibition against warrantless arrests applies in this case. In its supplemental briefing, the State contends Donohoo was not in custody for purposes of *Miranda*.

**A. Police–Citizen Interactions under the Fourth Amendment**

"There are three distinct types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, that are reasonable only if supported by probable cause." *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013). "Which type of encounter exists under a given set of historical facts is a question of law that is reviewed de novo." *Melendez v. State*, 467 S.W.3d 586, 592 (Tex. App.—San Antonio 2015, no pet.) (citing *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)).

"Police officers are as free as any other citizen to knock on someone's door and ask to talk with them." *Garcia-Cantu*, 253 S.W.3d at 243. "Such consensual encounters may be uncomfortable for a citizen, but they are not Fourth Amendment seizures." *Wade*, 422 S.W.3d at 667 (footnote omitted). A consensual encounter becomes a detention when an officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Garcia-Cantu*, 253 S.W.3d at 242. "It is the display of official authority and the implication that this

authority cannot be ignored, avoided, or terminated, that results in a Fourth Amendment seizure. At bottom, the issue is whether the surroundings and the words or actions of the officer and his associates communicate the message of 'We Who Must Be Obeyed.'" *Id.* at 243. "Courts must take into account the totality of the circumstances of the interaction to decide whether a reasonable person would have felt free to ignore the police officer's request or terminate the consensual encounter." *Wade*, 422 S.W.3d at 667.

The trial court "found" Donohoo was "coerced outside" when he was told that his car was about to be towed for not having a handicap placard. Although the trial court and the dissent characterize this determination as a "finding" of fact, whether an encounter is "coerced" (i.e. not consensual) and amounts to an investigative detention involves an application of law to facts, and is not a question of fact. *Garcia-Cantu*, 253 S.W.3d at 241. It is a legal conclusion as to the type of encounter that existed under the historical facts found by the trial court. *See Melendez*, 467 S.W.3d at 592. We therefore review the trial court's legal conclusion that Donohoo was "coerced outside" de novo and afford it no deference. *See Garcia-Cantu*, 253 S.W.3d at 241; *Meadoux v. State*, 307 S.W.3d 401, 407 (Tex. App.—San Antonio 2009), *aff'd*, 325 S.W.3d 189 (Tex. Crim. App. 2010).

Although the trial court found that two officers went to Donohoo's door and Donohoo was "asked to come outside," the audio-video recordings show that an officer knocked on Donohoo's door or window and told him his car was about to be towed.[1] Before Donohoo said he would come outside, Donohoo told the officers he had been drinking, he owned the Lincoln car that was parked in a handicap spot without a handicap placard and had driven that evening, and his car had sustained damage to its right side two weeks prior to that evening. One of the officers told Donohoo

---

[1] Although the dissent characterizes the officer's statements as a "threat" that the officers would tow Donohoo's car if he did not come outside, the trial court did not make this finding.

he could smell alcohol on his breath. After Donohoo was informed there was "fresh damage" along the left side of this vehicle, Donohoo informed the officers he would put on some pants and come outside. The trial court's findings that around 9:30 p.m., Officer Madiano came to Donohoo's home with another officer, repeatedly knocked on Donohoo's door, and told Donohoo that his car was about to be towed, are supported by the record.

But before Donohoo left his apartment, the officers had not commanded Donohoo under their official authority to leave his home or otherwise restrained his liberty. *See Garcia-Cantu*, 253 S.W.3d at 242. There was no display of official authority implying that Donohoo could not have ignored the officer's statement that his car was about to be towed and terminated his encounter with the officers. *See id.* at 243; *see also Lopez v. State*, No. 04-13-00300-CR, 2014 WL 5353627, at *5 (Tex. App.—San Antonio Oct. 22, 2014, pet. ref'd) (mem. op., not designated for publication) (holding five minutes of continuous knocking in the middle of the night might be annoying, but is not a "display of official authority"). Applying the law to the historical facts found by the trial court, we hold Donohoo was not detained when he left his home.[2]

## B. Custodial Interrogation under the Fifth Amendment

Under the Fifth Amendment, statements made by a suspect during a custodial interrogation are inadmissible unless certain warnings were given to the suspect before he makes those statements. *Miranda*, 384 U.S. at 444-45. Article 38.22 of the Texas Code of Criminal Procedure also requires the suppression of statements made during a custodial interrogation unless certain statutorily prescribed warnings are given. TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2015); *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). "Thus, the concerns raised by failing to comply with *Miranda* only arise when the individual is subject to both (1) custody by

---

[2] We need not address the State's alternative argument that if Donohoo was detained when he left his home, the officers had reasonable suspicion. *See* TEX. R. APP. P. 47.1.

a law enforcement officer and (2) an interrogation." *Martinez-Hernandez v. State*, 468 S.W.3d 748, 757 (Tex. App.—San Antonio 2015, no pet.).

With regard to the trial court's conclusion regarding *Miranda* and article 38.22, the State argues that Donohoo was not in custody. A person may be in custody in at least four general situations:

> (1) when the suspect is physically deprived of his freedom in any significant way, (2) when a law enforcement officer tells the suspect he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect he is free to leave.

*Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). "The determination of custody must be made on an ad hoc basis, after considering all of the (objective) circumstances." *Id.* "When making custody determinations, Texas courts have also considered whether: (1) the officer was conducting an investigation; (2) the suspect was handcuffed; (3) the officers used weapons to detain the suspect; (4) police outnumbered the individuals detained; (5) threatening language was used; (6) the suspect was transported to another location; (7) the suspect's [movement] was blocked; and (8) physical force was used." *Estrada v. State*, No. 04-12-00136-CR, 2012 WL 6720655, at *3 (Tex. App.—San Antonio Dec. 28, 2012) (mem. op., not designated for publication), *aff'd*, PD-0106-13, 2014 WL 969221 (Tex. Crim. App. Mar. 12, 2014) (not designated for publication). If a person voluntarily agrees to accompany law enforcement officers to a different location to answer questions about an incident, the person is not in custody. *Martinez-Hernandez*, 468 S.W.3d at 758.

The trial court concluded Donohoo was in custody before he was formally arrested on the basis of its findings that an officer denied Donohoo's request to go back inside his home; Donohoo was being asked questions designed to illicit incriminating responses; and four officers were

present. These findings are supported by the record. However, the audio-video recordings show that Donohoo did not have his identification on his person and asked to go back inside in response to an officer's request to see it; an officer permitted Donohoo to go back into his home to get a jacket because Donohoo stated he was cold; and Donohoo then invited the officers to come inside his home. The audio-video recordings also establish that before Donohoo was placed under arrest, Donohoo had not been handcuffed, the officers had not exhibited weapons or used threatening language, Donohoo had not been involuntarily transported to another location, Donohoo's movement had not been blocked, and the officers had not used physical force. *See Estrada*, 2012 WL 6720655, at *3. We hold, under these circumstances, Donohoo was not in custody before Officer Gourley placed Donohoo under arrest for driving while intoxicated.

### "SUSPICIOUS PLACES"

The State contends the trial court erred by concluding Donohoo's home was not a "suspicious place" under article 14.03 of the Texas Code of Criminal Procedure. Article 14.03(a)(1) permits peace officers to make warrantless arrests of "persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some . . . breach of the peace." TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1) (West Supp. 2015).[3] The Court of Criminal Appeals has construed this exception to the warrant requirement as coterminous with the "exigent circumstances" doctrine under the Fourth Amendment. *See Swain v. State*, 181 S.W.3d 359, 366 (Tex. Crim. App. 2005). Thus, article 14.03(a)(1) authorizes a warrantless arrest only if the arresting officer has probable cause "and exigent circumstances call for immediate action or detention by police." *Id.*

---

[3] We note that "driving while intoxicated is a breach of the peace." *Gallups v. State*, 151 S.W.3d 196, 201 (Tex. Crim. App. 2004).

The State's only argument that exigent circumstances called for Donohoo's immediate arrest was "the need to obtain [Donohoo's] blood-alcohol level created an exigency that called for immediate detention by the police."[4] The Supreme Court of the United States has held that the natural dissipation of alcohol in a suspect's body does not present "a per se exigency that justifies an exception to the Fourth Amendment's warrant requirement." *Missouri v. McNeely*, 133 S. Ct. 1552, 1556 (2013). If the "warrant process will not significantly increase the delay before the blood test is conducted because an officer can take steps to secure a warrant while the suspect is being transported to a medical facility by another officer," then "there would be no plausible justification for an exception to the warrant requirement." *Id.* at 1561. During cross-examination, Officer Gourley testified he arrested Donohoo because he had probable cause and did not need further justification. Officer Gourley further admitted he did not know how to obtain an arrest warrant because he had only filled out requests for search warrants to draw blood. Therefore, *McNeely* forecloses the State's position. *See id.* at 1556-61. We hold article 14.03(a)(1) did not authorize Officer Gourley to arrest Donohoo without a warrant. *See Swain*, 181 S.W.3d at 366.

## CONCLUSION

We affirm the trial court's order suppressing all evidence obtained after Officer Gourley placed Donohoo under arrest. We reverse the trial court's order suppressing evidence obtained before Officer Gourley formally placed Donohoo under arrest. We remand the case to the trial court for further proceedings consistent with this opinion.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH

---

[4] The State does not argue that any other exigency justified bypassing the Fourth Amendment's warrant requirement. *See* TEX. R. APP. P. 38.1(i), 47.1.