

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00252-CR

Benjamin **ESCOBEDO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR4634
Honorable Kevin M. O'Connell, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Irene Rios, Justice

Delivered and Filed: December 27, 2018

AFFIRMED IN PART, REVERSED AND VACATED IN PART

Appellant Benjamin Escobedo ("Escobedo") appeals from his convictions for continuous sexual abuse of a child, sexual assault of a child, and indecency with a child by contact. We affirm the trial court's judgment regarding the conviction for continuous sexual abuse of a child and reverse and vacate the judgment regarding the convictions for sexual assault of a child and indecency with a child by contact.

**Background**

For several years, Escobedo lived with his girlfriend Griselda, their child, and Griselda's three children from a prior relationship—a son and two daughters. Griselda's daughters—C.Z. and J.Z.—are the complainants in this case. Griselda's son died prior to trial.

C.Z. was born on September 2, 1999 and was eighteen at the time of trial. C.Z. testified that Escobedo began coming into her room at night and touching her inappropriately when she was nine or ten years old. On multiple occasions, Escobedo touched C.Z.'s vagina and breasts with his hand and grabbed C.Z.'s hand and forced her to touch Escobedo's penis. On one occasion, Escobedo touched C.Z.'s anus with his penis. C.Z. testified Escobedo touched her inappropriately on more than ten occasions.[1]

J.Z. was fifteen at the time of trial. J.Z. testified that Escobedo began touching her inappropriately when she was ten years old. Escobedo touched J.Z.'s vagina and attempted to put his penis inside her vagina. J.Z. testified Escobedo touched her inappropriately on more than ten occasions. After C.Z. admitted to Griselda that Escobedo had been abusing her, J.Z. initially was afraid to make her own outcry because she was afraid someone would get hurt, especially since her older brother was so angry. J.Z. had never told C.Z. what Escobedo was doing to her because J.Z. did not want to make C.Z. cry. J.Z. eventually made an outcry to her mother and a ChildSafe advocate.[2]

Griselda testified she was unaware that Escobedo had been abusing her daughters until February 19 or 20, 2015, when her son's school contacted her because her son was being

---

[1] SANE nurse Carmen Berusquia conducted the sexual assault examination of C.Z. C.Z.'s statements to Berusquia were consistent with her testimony at trial. Items collected from C.Z. and the SANE examination tested negative for semen.

[2] San Antonio Police Detective Cesar Rodriguez testified he received a call on April 8, 2015 from Griselda stating that J.Z. had made an outcry of sexual abuse by Escobedo.

disruptive. When her son came home from school, Griselda had a conversation with him and determined she needed to talk to C.Z.[3] Griselda picked C.Z. up from school and asked her if Escobedo had been touching her inappropriately. C.Z. broke down in tears and admitted Escobedo had been touching her. Griselda contacted her mother, her sisters, and a friend to tell them what happened. She then called Escobedo and told him to come home and "[t]ell me it's not true." Griselda's son called his and his sisters' biological father who, in turn, contacted the police. Escobedo refused to come to the house but agreed to meet Griselda at a nearby Taco Cabana. Griselda did not go to the Taco Cabana; instead she and her children went to the police station downtown.[4]

San Antonio Police Officer Mario Moreno responded to a lewd conduct call between 7:00 p.m. and 10:00 p.m. on February 19, 2015. Officer Moreno was dispatched to Griselda's and Escobedo's house, where he received information that Escobedo would be at a nearby Taco Cabana and willing to talk to police. Police officers went to the Taco Cabana, and when Escobedo arrived and stepped outside of his truck, police officers ordered Escobedo to the ground at gunpoint, placed him in handcuffs, and checked his person for weapons. Officer Moreno testified this procedure, called a "felony stop," is performed "to avoid a fight or a confrontation, to avoid— you know, basically to protect us and them just so everything is done in the safest manner possible." When placed in handcuffs, Escobedo asked if he was under arrest, and Officer Moreno told him "no, he's just being investigated [and] detained."

---

[3] At trial, C.Z. testified that the night before, her brother had come into her bedroom and turned on the lights.

[4] Before going to the police station, C.Z. was interviewed at home by San Antonio Police Officer Eliser Zavala. C.Z. told Officer Zavala that Escobedo had woken her up the previous night by touching her vagina and breasts, and Escobedo had sexually abused her in the past. Officer Zavala also interviewed C.Z.'s brother, whose statements were consistent with C.Z.'s statements.

Family members subsequently arrived at the Taco Cabana and were, in Officer Moreno's description, "like an angry mob." Officer Moreno placed Escobedo in his patrol car "to keep him safe as well from the family who was upset." Officer Moreno testified: "Once [Escobedo] was detained in the patrol car, he—he asked what the next step was going to be. And I told him that detectives wanted to speak with them, and he agreed that he wanted to speak with the detectives." Officers then transported Escobedo to police headquarters.

When Escobedo arrived at police headquarters, he was interviewed by San Antonio Police Detective Mark Garza. Escobedo's handcuffs were removed prior to the interview, and Detective Garza informed Escobedo that he was not under arrest and was free to leave. Detective Garza testified he told Escobedo: "he was there voluntarily. He was not under arrest. He could leave at any time he wanted to. I told him that he was being accused of some things and if he would like to discuss[ ] them. He did. And so I interviewed him on DVD with that discussion."

Escobedo was indicted on five counts:

(1) Count I: continuous sexual abuse of a child between January 4, 2013 and February 19, 2015 by:

    (a) Engaging in sexual contact with J.Z. by touching her genitals;

    (b) Engaging in sexual contact with C.Z by touching her genitals;

    (c) Causing the contact of C.Z.'s anus by Escobedo's sexual organ;

    (d) Causing C.Z.'s sexual organ to contact Escobedo's mouth; and

    (e) Engaging in sexual contact with C.Z. by causing C.Z. to touch Escobedo's genitals.

(2) Count II: causing the contact of C.Z.'s anus by Escobedo's sexual organ on January 4, 2014;

(3) Count III: causing C.Z.'s sexual organ to contact Escobedo's mouth on November 1, 2014;

(4) Count IV: engaging in sexual contact with C.Z. by causing C.Z. to touch Escobedo's genitals on July 5, 2014;

(5) Count V: engaging in sexual contact with C.Z by touching her genitals on February 19, 2015.

The jury found Escobedo guilty of Counts I, II, IV, and V and acquitted him of Count III. The trial court sentenced Escobedo to a 50-year term of imprisonment for each count, running concurrently.

**Double Jeopardy**

In his first issue, Escobedo argues the trial court erred by overruling his pretrial motion to quash the indictment. Specifically, Escobedo argues the indictment charges him with continuous sexual abuse of a child and several predicate offenses against the same child during the same time frame, which violates his constitutional right against double jeopardy.

## A.      Preservation of error

Before we reach the merits of Escobedo's issue on appeal, we must address the State's argument that Escobedo has not preserved it. The State argues Escobedo's pro se motion to quash the indictment did not mention double jeopardy explicitly or implicitly and, even if it did, a motion to quash the indictment was not the proper vehicle for asserting a double jeopardy challenge.

Although Escobedo frames his issue as whether the trial court erred in denying his motion to quash the indictment, it is clear that he is raising a double jeopardy issue. As the State acknowledges, because of the "fundamental nature" of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal if "(1) the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record, and (2) enforcement of the usual rules of procedural default serves no legitimate state interest." *Garfias v. State*, 424 S.W.3d 54, 57–58 (Tex. Crim. App. 2014), *cert. denied*, 135 S. Ct. 359 (2014); *see also Gonzalez v. State*, 516 S.W.3d 18, 23 (Tex. App.—Corpus Christi 2016, pet. ref'd) (reviewing double jeopardy issue even though trial court did not err by denying appellant's motion to quash the

indictment on that basis); *Price v. State*, 413 S.W.3d 158, 161 (Tex. App.—Beaumont 2013) (addressing double jeopardy argument in continuous sexual abuse case even though appellant's complaints about indictment were waived), *aff'd*, 434 S.W.3d 601 (Tex. Crim. App. 2014).

Here, the double jeopardy violation is apparent from the face of the record, and it would serve no legitimate state interest to deprive Escobedo of the opportunity to raise the double jeopardy issue at this time. Therefore, we conclude Escobedo's first issue is not waived and turn to the merits.

## B.    Double jeopardy

The "double jeopardy" clause of the Fifth Amendment protects a defendant from "(1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *Garfias*, 424 S.W.3d at 58. "In the multiple-punishments context, two offenses may be the same if one offense stands in relation to the other as a lesser-included offense, or if the two offenses are defined under distinct statutory provisions but the Legislature has made it clear that only one punishment is intended." *Littrell v. State*, 271 S.W.3d 273, 275–76 (Tex. Crim. App. 2008). "Sameness in this context is a matter of legislative intent." *Id.* at 276.

Double jeopardy may be implicated where, as here, a defendant charged with continuous sexual abuse of a child is also charged with additional predicate offenses. A person commits the offense of "continuous sexual abuse of a child" if he commits two or more "acts of sexual abuse" of a child younger than fourteen years of age during a period that is thirty or more days in duration, regardless of whether the acts of sexual abuse are committed against one or more victims. TEX. PENAL CODE ANN. § 21.02(b). Subsection (c) of the statute lists the predicate offenses that may constitute an "act of sexual abuse." *See id.* § 21.02(c) (listing eight offenses, including sexual assault and indecency with a child by contact). The Legislature addressed the statute's double

jeopardy implication by expressly providing that, in a single criminal prosecution, a defendant may not be convicted of both continuous sexual abuse of a child and any predicate offense listed in subsection (c) if both offenses involve the same victim, *unless* the predicate offense "occurred outside the period in which the [continuous sexual abuse] was committed." *Id.* § 21.02(e)(2); *accord Aguilar v. State*, 547 S.W.3d 254, 261–62 (Tex. App.—San Antonio 2017, no pet.). Therefore, a defendant may be convicted of both continuous sexual abuse of a child and a predicate offense listed in subsection (c) against the same child if the offenses did not occur within the same time frame. *Aguilar*, 547 S.W.3d at 262.

For example, in *Carmichael*, the appellant was charged with and convicted of continuous sexual abuse of a child from June 1, 2011 through June 14, 2013 based on six different acts committed against A.C. and M.C., as well as aggravated sexual assault against A.C. on June 15, 2011. *Carmichael v. State*, 505 S.W.3d 95, 101 (Tex. App.—San Antonio 2016, pet. ref'd). This court held that punishing the appellant for both continuous sexual abuse and aggravated sexual assault against the same child during the same time frame violated the appellant's right against double jeopardy. *Id.*

## C.     Analysis

In this case, Escobedo argues the indictment was facially defective because it alleged he committed four predicate offenses for continuous sexual abuse of a child during the same timeframe alleged in the charge of continuous sexual abuse of a child.

The indictment charged Escobedo with five counts. Count I alleged continuous sexual abuse of C.Z. and J.Z. between January 4, 2013 and February 19, 2015. Counts II through V alleged predicate offenses involving the same child (C.Z.) during the same timeframe (January 4, 2013 and February 19, 2015) alleged in Count I. The jury found Escobedo guilty of counts I, II, IV, and V, and the trial court sentenced him to four concurrent, 50-year terms of imprisonment. Therefore,

we conclude punishing Escobedo for Count I in addition to Counts II, IV, and V, under the circumstances of this case, results in a double jeopardy violation.

When an appellant is subjected to multiple punishments for the same conduct, the remedy is to affirm the conviction for the most serious offense and vacate the other conviction(s). *Bigon v. State*, 252 S.W.3d 360, 372 (Tex. Crim. App. 2008); *Carmichael*, 505 S.W.3d at 101. Here, Escobedo received the same punishment for each of the convictions, but he is not eligible for parole based on his conviction for continuous sexual abuse of a child. *See* TEX. GOV'T CODE ANN. § 508.145(a). Accordingly, based on our resolution of the double jeopardy issue, we affirm Escobedo's conviction for continuous sexual abuse of a child (Count I) and reverse and vacate his convictions on Counts II, IV, and V of the indictment.

### Motion to Suppress Evidence

In his second issue, Escobedo argues the trial court erred by overruling his motion to suppress his recorded statement to Detective Garza because the statement was made during custodial interrogation without the benefit of *Miranda* warnings.

**A.      Standard of review**

We review a trial court's denial of a motion to suppress using the bifurcated standard set forth in *Furr v. State*, 499 S.W.3d 872 (Tex. Crim. App. 2016). Where, as here, the trial court does not make express findings of fact, we review the evidence in the light most favorable to the trial court's ruling and assume it made implicit findings supported by the record. *Id.* at 877. We will sustain the trial court's ruling if it is correct under any applicable theory of law. *Id.*

**B.      Custodial warnings**

Prior to a custodial interrogation, police must give a suspect *Miranda* warnings advising him of certain constitutional rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *Hines v. State*, 383 S.W.3d 615, 621 (Tex. App.—San Antonio 2012, pet. ref'd). In Texas, article 38.22 of the

Code of Criminal Procedure sets forth certain additional requirements for a defendant's oral statement to be admissible against him in a criminal proceeding. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22; *Hines*, 383 S.W.3d at 621. A defendant's oral statement made during a custodial interrogation is only admissible in a criminal proceeding against him if: (1) he was given *Miranda* and statutory warnings prior to making the statement, (2) the warnings and the statement were electronically recorded, and (3) he "knowingly, intelligently, and voluntarily" waived his rights. *Hines*, 383 S.W.3d at 621.

Importantly, however, the defendant bears the burden of establishing he was in custody before the State is required to show compliance with *Miranda* and article 38.22. *Id.* (citing *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007)). "A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Id.* (quoting *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996)). A suspect may be in custody in at least four situations: (1) the suspect is physically deprived of his freedom of action in a significant way; (2) a police officer tells the suspect he cannot leave; (3) a police officer creates a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted; or (4) there is probable cause to arrest and a police officer does not tell a suspect he is free to leave. *Dowthitt*, 931 S.W.2d at 255. In situations one through three, "the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention." *Id.*; *accord Martinez-Hernandez v. State*, 468 S.W.3d 748, 758 (Tex. App.—San Antonio 2015, no pet.).

There is no bright-line rule that a person who is handcuffed is in custody. *Matter of S.C.*, 523 S.W.3d 279, 283 (Tex. App.—San Antonio 2017, pet. denied) (citing *Campbell v. State*, 325 S.W.3d 233, 234 (Tex. App.—Fort Worth 2010, no pet.)). For instance, "[a] suspect who is temporarily handcuffed and placed in the back of a patrol car for purposes of an investigatory

detention is not necessarily in custody, particularly when the officer tells the suspect he is not under arrest." *Id.* at 283–84 (citing *Koch v. State*, 484 S.W.3d 482, 490–91 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Hauer v. State*, 466 S.W.3d 886, 891–93 (Tex. App.—Houston [14th Dist.] 2015, no pet.)). If a person voluntarily agrees to accompany police officers to a different location to answer questions, the police officers advise the person that he will be handcuffed for officer safety during transport, and the handcuffs are removed upon arrival at the second location, these facts alone also do not invoke custody. *Martinez-Hernandez*, 468 S.W.3d at 758. But if, after transport to the second location, the person remains physically restrained and "a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest," the person is in custody. *Id.*

## C.     Analysis

In this case, Escobedo argues he was in custody once he was placed in handcuffs, which were not removed after officers determined Escobedo was unarmed, and he remained in custody throughout his interview with Detective Garza.[5] Therefore, because his statement to Detective Garza was made while in custody and without *Miranda* and article 38.22 warnings, Escobedo argues the trial court erred in denying his motion to suppress the statement.

The State argues compliance with *Miranda* and article 38.22 was not required because Escobedo was not in custody during his interview with Detective Garza. We agree. The evidence supports a conclusion that Escobedo was handcuffed initially for the safety of both officers and Escobedo himself. Officer Moreno testified he handcuffed Escobedo and checked his person for weapons, and this "felony stop" procedure was performed "to avoid a fight or a confrontation, to

---

[5] Escobedo also contends he requested counsel prior to being interviewed by Detective Garza, but he concedes the alleged request is not in the record. *See Dinkins v. State*, 894 S.W.2d 330, 351–52 (Tex. Crim. App. 1995) (en banc) (holding confession admissible where record did not reflect that appellant requested counsel), *cert. denied*, 516 U.S. 832 (1995).

avoid—you know, basically to protect us and them just so everything is done in the safest manner possible." When placed in handcuffs, Escobedo asked if he was under arrest, and Officer Moreno told him "no, he's just being investigated [and] detained." When family members arrived at the scene, Officer Moreno placed Escobedo in his patrol car "to keep him safe as well from the family who was upset." Officer Moreno testified: "Once [Escobedo] was detained in the patrol car, he—he asked what the next step was going to be. And I told him that detectives wanted to speak with them, and he agreed that he wanted to speak with the detectives."

The evidence also supports a conclusion that by the time Escobedo was interviewed by Detective Garza, a reasonable person in Escobedo's position would not believe that his freedom of movement was restrained to the degree associated with a formal arrest. Escobedo's handcuffs were removed prior to the interview and Escobedo was informed he was not under arrest and was free to leave. Detective Garza testified he told Escobedo: "he was there voluntarily. He was not under arrest. He could leave at any time he wanted to. I told him that he was being accused of some things and if he would like to discuss[ ] them. He did. And so I interviewed him on DVD with that discussion." State's Exhibit 23, a video recording of Detective Garza's interview of Escobedo, confirms Detective Garza's testimony that prior to questioning Escobedo, he advised Escobedo that he was not under arrest and was submitting voluntarily to an interview.

Therefore, we conclude Escobedo was not in custody during his interview with Detective Garza. Because Escobedo was not entitled to receive *Miranda* and article 38.22 warnings, the trial court did not err in denying Escobedo's motion to suppress his statement to Detective Garza on this basis. Escobedo's second issue is overruled.

**Charge Error**

In his third issue, Escobedo argues a paragraph in the abstract portion of the jury charge was erroneous because it did not specifically instruct the jury that C.Z. must have been younger

than fourteen when the alleged continuous sexual abuse occurred. In response, it appears the State concedes the charge was erroneous but argues Escobedo did not suffer egregious harm.

## A.    Standard of review

We use a two-step process to review an alleged jury charge error. *Garcia v. State*, 486 S.W.3d 602, 608 (Tex. App.—San Antonio 2015, pet. ref'd) (citing *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc)). First, we determine whether error occurred. *Id.* (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)). If there is error, we determine whether sufficient harm resulted from the error to require reversal. *Id.* (citing *Wooten*, 400 S.W.3d at 606; *Ngo*, 175 S.W.3d at 744).

## B.    Egregious harm analysis

Assuming without deciding the charge contained error, we turn to whether sufficient harm resulted from such error.

Where, as here, an appellant failed to object to a charge error in the trial court, we will reverse the conviction only if the appellant can demonstrate he suffered "egregious harm." *Id.* at 609 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787, 788 (Tex. Crim. App. 1988)). "Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Villareal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *see also Garcia*, 486 S.W.3d at 609. Egregious harm is a "high and difficult standard" to meet and must be both "borne out by the trial record" and "actual rather than theoretical." *Villareal*, 453 S.W.3d at 433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013); *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). To determine whether charge error has resulted in egregious harm, we consider: "(1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight

of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole." *Id.* (citing *Almanza*, 686 S.W.2d at 171). We apply each of these factors to the present case.

### 1. Entirety of the jury charge

Although the final paragraph of the abstract portion of the charge does not specify that a continuous sexual abuse victim must be a child younger than fourteen, other paragraphs of the charge correctly state the law. The first paragraph of the abstract portion of the charge correctly states:

> Our law provides that a person commits the offense of continuous sexual abuse of a child if during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, and at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older *and the victim is a child younger than 14 years of age*.

(emphasis added). In addition, the first paragraph of the application portion of the charge correctly recites as follows:

> Now, if you find from the evidence beyond a reasonable doubt that Benjamin Escobedo did, during a period that was thirty (30) or more days in duration, to-wit: from on or about the 4th [d]ay of January, 2013, through the 19th day of February, 2015, when Benjamin Escobedo was seventeen (17) years of age or older, commit two or more acts of sexual abuse against *a child younger than fourteen (14) years of age*, namely: . . . .

(emphasis added). Therefore, the entirety of the charge weighs against a finding of egregious harm. *See Smith v. State*, 397 S.W.3d 765, 771 (Tex. App.—San Antonio 2013, no pet.) (concluding there was no egregious harm where application paragraph of charge correctly stated the law regarding continuous sexual abuse of a child).

### 2. State of the evidence

Under this factor, we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused actual harm. *Arrington v. State*, 451 S.W.3d

834, 841 (Tex. Crim. App. 2015). Appellant does not challenge the sufficiency of the evidence on appeal, and the evidence adduced at trial, as described above, overwhelmingly supports the verdict.

Although one paragraph of the charge did not specify that a continuous sexual abuse victim must be a child younger than fourteen, the jury heard evidence that C.Z. was born on September 2, 1999 and was sexually abused by Escobedo on more than one occasion prior to her fourteenth birthday on September 2, 2013. Further, the jury heard evidence that J.Z. was younger than fourteen throughout the period of continuous sexual abuse. *See* TEX. PENAL CODE ANN. § 21.02(b) (providing that a person may commit the offense of continuous sexual abuse against "one or more victims").

Therefore, considering the entire record, the state of the evidence weighs against a finding of egregious harm.

### 3. Arguments of counsel

Under this factor, we determine whether any statements made by trial counsel or the trial court exacerbated or ameliorated the error in the charge. *Arrington*, 451 S.W.3d at 844. After reading the charge to the jury, the trial court excused the jury from the courtroom and asked counsel for the State to clarify whether the continuous sexual abuse count was alleging C.Z. was younger than fourteen or seventeen. The following exchange took place:

> THE COURT: Paragraph 5. All these—every time they mention [C.Z.], this is on the continuous?
>
> [Counsel for the State]: Yes.
>
> THE COURT: A child who is younger than 17 years of age, is that correct, or younger than 14?
>
> [Counsel for the State]: . . . But for the continuous charge, it has to be under 14 and I'm going to explain that to the jury. . . .
>
> [Counsel for the State]: But we will explain only under the age of 14.

THE COURT: That's what I wanted to know.

The jury returned to the courtroom and counsel for the State explained during his closing statement: "In this charge, you can find [Escobedo] guilty of all five counts *as long as you believe that the evidence shows that both were under 14 years of age for the continuous* and [C.Z.] was over 14 when the other act took place." (emphasis added).

Therefore, because counsel for the State correctly explained the law to the jury before the jury began deliberation, this factor weighs against a finding of egregious harm.

### 4. Other relevant information

Escobedo argues the jury was confused by the charge, citing a jury note in which the jurors asked for clarification regarding the first section of the application portion of the charge. That section provides:

> Now, if you find from the evidence beyond a reasonable doubt that Benjamin Escobedo did, during a period that was thirty (30) or more days in duration, to-wit: from on or about the 4th [d]ay of January, 2013, through the 19th day of February, 2015, when Benjamin Escobedo was seventeen (17) years of age or older, commit two or more acts of sexual abuse against a child younger than fourteen (14) years of age, namely:
>
> Benjamin Escobedo, did intentionally or knowingly engage in sexual contact with [J.Z.], a female child younger than fourteen (14) years by touching the genitals of [J.Z.] with the intent to arouse or gratify the sexual desire of any person; or
>
> Benjamin Escobedo, did intentionally or knowingly engage in sexual contact with [C.Z.], a female child younger than fourteen (14) years by touching the genitals of [C.Z.] with the intent to arouse or gratify the sexual desire of any person; or
>
> On or about the 4th [d]ay of January, 2013, Benjamin Escobedo, did intentionally or knowingly cause the contact of the anus of [C.Z.], a child who was younger than 17 years of age, by Benjamin Escobedo's sexual organ; or
>
> On or about the 1st day of November, 2013, Benjamin Escobedo, did intentionally or knowingly cause the sexual organ of [C.Z.], a child, who was younger than 17 years of age, to contact the mouth of Benjamin Escobedo; or

> On or about the 5th day of July, 2013, Benjamin Escobedo, did intentionally or knowingly engage in sexual contact with [C.Z.], a female child who was younger than 17 years of age, by causing [C.Z.] to touch the genitals of Benjamin Escobedo with the intent to arouse or gratify the sexual desire of any person;
>
> Then, you will find the defendant guilty of continuous sexual abuse of a child as charged in Count I of the indictment.
>
> If you do not so find beyond a reasonable double, or if you have a reasonable doubt thereof, you will find the defendant not guilty in Count I of the indictment.

Specifically, the jurors asked: "Why do three of the incidents reference younger than 17 when the overall charge is for a child younger than 14?" In response, the trial court instructed the jurors to refer to the charge.

Escobedo argues the jury note demonstrates the jury was actually confused regarding the error in the charge. However, the jury note reflects that the jury understood "the overall charge is for a child younger than 14." Accordingly, we conclude this factor does not weigh in favor of a finding of egregious harm.

### 5. Conclusion

This is not a case in which the jury was instructed on the opposite of the correct law. *Compare Hutch v. State*, 922 S.W.2d 166, 173 (Tex. Crim. App. 1996) (en banc) (finding egregious harm where the charge erroneously instructed the jury on the opposite of the correct law, which law was the "crux" of the defense), *with Smith*, 397 S.W.3d at 773 (finding no egregious harm where an instruction on unanimity in continuous sexual abuse case was erroneously excluded from the charge but the application portion correctly stated the law). Rather, both the abstract portion and the application portion of the charge correctly instructed the jury on the law that a continuous sexual abuse victim must be a child younger than fourteen, and counsel for the State also explained to the jury that it could find Escobedo guilty of continuous sexual abuse of a child "as long as you believe that the evidence shows that both [victims] were under 14 years of age for

the continuous [sexual abuse of a child charge]." Based on our review of the entire record, we conclude Escobedo was not denied a fair and impartial trial or deprived of a valuable right by any error in the jury charge and, therefore, was not egregiously harmed. *See Villareal*, 453 S.W.3d at 433.

Escobedo's third issue is overruled.

## Conclusion

Based on our resolution of the double jeopardy issue, we affirm Escobedo's conviction for continuous sexual abuse of a child and reverse and vacate his convictions on Counts II, IV, and V of the indictment. Because we overrule Escobedo's second and third issues on appeal, the judgment is otherwise affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH