

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00218-CR

KIVEAN DESHAI COFFEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 276th District Court
Morris County, Texas
Trial Court No. 10,751CR

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

# OPINION

Kivean Deshai Coffey was found guilty by a jury of aggravated sexual assault and was sentenced to seventy-five years' imprisonment. On appeal,[1] Coffey argues that the trial court erred (1) in allowing the State to file a notice of intent to seek enhanced punishment after voir dire, and (2) in overruling his motion to suppress his recorded statement. We find that the State's notice of intent to seek enhancement was timely filed and that the error in denying Coffey's motion to suppress his recorded statement was harmless. Consequently, we affirm the trial court's judgment.

## I.    Notice of Intent to Seek Enhancement

The right to notice of the State's intention to use prior convictions as enhancements is rooted in due process. *Villescas v. State*, 189 S.W.3d 290, 293 (Tex. Crim. App. 2006). Thus, prior convictions used as enhancements must be pled in some form so the defendant has an opportunity to prepare a defense to them. *Pelache v. State*, 324 S.W.3d 568, 577 (Tex. Crim. App. 2010); *Brooks v. State*, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997).

The State filed notice of its intent to seek an enhancement of Coffey's range of punishment based on an April 14, 2008, juvenile conviction for burglary of a habitation.[2] The notice was filed after the jury had been selected, but prior to Coffey pleading to the indictment.

---

[1]In our case number 06-13-00219-CR, Coffey also appeals another conviction of aggravated sexual assault on the same grounds.

[2]The notice of enhancement incorporated the judgment from Coffey's 2008 conviction, which was rendered by the 76th Judicial District Court of Morris County, Texas.

Coffey argued that the State's notice of intent to seek enhancement was untimely and constituted a violation of his due process rights.[3]

Coffey claimed neither that he was surprised by the enhancement allegations, nor that he required a continuance to better prepare his defense.[4] Coffey's counsel stated,

> I did know about the prior juvenile [offense], of course, because I represented [Coffey during these proceedings]. And [the State] did give me notice that they may use it at the trial, but they've never given me any notice that they were going to try to enhance punishment until this morning when they handed me the motion.

The State responded that Coffey could not claim to be surprised by the notice because the State produced a witness list containing the name of his juvenile community supervision officer. The trial court overruled Coffey's objection, specifically relying on the fact that Coffey's trial counsel had also represented Coffey in the 2008 prosecution.

"[T]he determination of whether proper notice of enhancements was given does not require that notice be given within a particular period of time before trial or before the guilt phase is completed." *Pelache*, 324 S.W.3d at 577. "[W]hen a defendant has no defense to the enhancement allegation and has not suggested the need for a continuance in order to prepare one, [even] notice given at the beginning of the punishment phase satisfies" due process requirements. *Villescas*, 189 S.W.3d at 294–95; *Pelache*, 324 S.W.3d at 576–77 (finding post-guilt, pre-

---

[3]Coffey argues that he had the right to be advised that a greater penalty was available for the charged offense. Aggravated sexual assault is a first degree offense. TEX. PENAL CODE ANN. § 22.021(e) (West Supp. 2013). The 2008 juvenile conviction increased the minimum confinement period from five to fifteen years. TEX. PENAL CODE ANN. § 12.42(c)(1) (West Supp. 2013). However, the trial court's punishment charge informed the jury that the minimum period of confinement was five—not fifteen—years and also allowed the jury to assess a term of community supervision if it found that Coffey was not previously convicted of a felony offense. The State appears to suggest that it withdrew its notice of enhancement because it failed to object to the jury charge. There is no express withdrawal of the notice of enhancement in the record, and we will not imply a withdrawal in light of the trial court's written findings on this matter. The State's arguments are better suited for a harm analysis.

[4]Coffee also argues that the right to enhance his punishment was waived.

punishment-phase notice of State's intent to enhance punishment satisfied due process requirements).

In this case, Coffey presented no defense to the enhancement allegation and did not seek a continuance to prepare a defense. Therefore, due process was satisfied when the State provided notice of intent to enhance Coffey's punishment prior to his arraignment. Accordingly, we overrule Coffey's first point of error.

## II. Admission of Coffey's Recorded Statement Was Harmless Error

### A. Factual and Procedural Background

Coffey's second point of error stems from the trial court's mid-trial ruling on his motion to suppress his recorded statement. Prior to the hearing on the motion to suppress, the victim had already testified, describing her violent rape and positively identifying Coffey as the perpetrator of the sexual assault. The victim met Coffey during a gathering at the home of her friends, Josh and Adrianna White. The victim and Coffey were both invited to spend the night at the Whites' home. The victim testified,

> [T]hat night after I went to sleep, [Coffey] came in the room, and I woke up, and he was looking out the window. And I told him to leave, and that happened another time. And then the third time when he came in, I was asleep, and I heard him come in. And he jumped on top of me and started hitting me in the face repeatedly. And then he kind of threw me onto the floor, and I tried to call for help. And he came from behind me and choked me. And then he finally told me he'd let me go if I wouldn't scream. And if I did, he would kill me. And then I stood up, and he told me to turn the lamp on that was beside the bed. And then he told me to take my clothes off. And then he made me lay [sic] down on the bed, and that's when he raped me. And then he made me perform oral sex on him. And then after he was done with all that, he left the room. . . . And then periodically he would come back into the bedroom. . . . And at one point he found a pair of scissors and a knife and handed it to me and basically said that if I thought I could do anything to him, to go ahead and do it, but it wouldn't be

4

worth it because he had a gun. And he was wearing -- at that time when he came in, he was wearing a tank top and sweats. And at that time I could see the outline of what looked to me like a handgun in his waistband of his pants. And at a different time he came in the room and told me that he was in a gang, and if anybody -- if I told anybody, that they would all kill me. And that proceeded to go on until about 9:00 o'clock in the morning when he finally left.

Although Josh and Adrianna were asleep in the same house, they did not hear any commotion and were unable to come to their friend's aid.

In fact, when Josh found Coffey asleep on the living room couch, he offered to drive him to the Relax Inn, a motel in Daingerfield. As soon as Josh returned from dropping Coffey off at the motel, Adriana reported the victim's rape to him. Josh described the victim's gut-wrenching state and the scene in his guest bedroom. He testified, "Her eye was swollen shut, her lip was caught in her braces . . . . Her hair was stuck to her ear, glued by the blood. There was . . . [b]lood all over the sheets, all over the pillows," and she had bruises on her neck indicating that she had been choked. Josh immediately called 9-1-1.

Robbie Gray, a Sergeant with the Morris County Sheriff's Department, testified that the victim suffered extensive physical injury during the assault; she required immediate medical care, including facial reconstructive surgery. The victim told the police that Coffey's DNA would be found on a black shirt that he left in her room and that Coffey stole her Samsung Galaxy tablet and its charger after the sexual assault. Officer Stephen Blythe with the Lone Star Police Department in Morris County, Texas, testified that police soon located Coffey at the Relax Inn, found the victim's tablet in Coffey's motel room, and brought Coffey in for questioning. Blythe took Coffey's recorded statement at the Lone Star Police Department. Blythe testified that he submitted a black shirt found at the crime scene and a buccal swab

5

obtained from Coffey during the recorded interview for DNA analysis. Coffey stipulated to the chain of custody of the DNA samples. During the interview, Blythe also took photographs of Coffey's hands and the scratches on his forehead, which were admitted into evidence at trial without objection.

After the testimony and physical evidence referenced above was introduced, Coffey filed a motion to suppress both the recorded statement and the buccal swabs that were taken during the interview, claiming that the statement was involuntary because he never received proper *Miranda*[5] warnings. At the hearing on the motion to suppress, Blythe testified that he orally read a piece of paper containing *Miranda* warnings to Coffey prior to conducting his interrogation. However, Blythe admitted that he did not read the warnings word-for-word and did not ask Coffey specifically whether he wished to waive his rights. Blythe believed that Coffey affirmed his understanding of Blythe's oral admonishments by nodding his head up and down.

In response to Blythe's initial questioning, Coffey denied engaging in sexual conduct with anyone on the morning of the victim's rape and explained that he had simply found the victim's tablet on the ground. Blythe received no information of consequence until he stated (1) that Coffey was being charged with aggravated sexual assault, (2) that Blythe was going to conduct a buccal swab, (3) that Coffey's DNA was going to be compared to a shirt found at the scene of the rape, and (4) that Coffey needed to be honest. Thereafter, Coffey admitted that he was at the Whites' home with several other acquaintances and claimed that his acquaintances

---

[5]*Miranda v. Arizona*, 384 U.S. 436 (1966).

were having consensual sex with two women. Coffey told Blythe that he had consensual oral sex with one of the women "[f]or like two seconds," and denied that he hit either woman.

During the interview, Coffey stated that he would not mind giving his DNA, provided that Blythe also obtained DNA samples from the other people at the gathering. Prior to obtaining the buccal swab, Blythe gave Coffey a written copy of his *Miranda* rights and obtained Coffey's signature that the rights were read to him and that he understood them.[6] Blythe also informed Coffey that his entire interview was being recorded. He then passed Coffey a buccaal swab and had Coffey collect a sample of his DNA from his cheek. Blythe testified that Coffey never protested or interfered with his questioning.[7]

---

[6]*Miranda* "indisputably requires a law enforcement agent to give the appropriate legal warnings before any questioning or 'discussion interview,' not merely prior to signing a written statement after all the custodial interrogation is complete." *Jones v. State*, 119 S.W.3d 766, 774 n.16 (Tex. Crim. App. 2003) (citing *Miranda*, 384 U.S. at 445, 457, 465, 468, 474, 478).

[7] No search warrant was obtained prior to conducting the buccal swab. The trial court stated,

> I find and it was stipulated that there was a warrantless search conducted in order to get the DNA sample, the buccal swab, from Mr. Coffey. I do find that Mr. Coffey did not voluntarily consent to the taking of the buccal swab, the DNA sample. Because he didn't voluntarily consent to it, a search warrant was required and it wasn't given, and therefore the Court is going to exclude the DNA sample and evidence related to and which would be derived from the buccal swab.

However, shortly after receiving this favorable ruling, Coffey's counsel informed the trial court that Coffey wanted to "withdraw his objections to the DNA swabs not being voluntary or consensually taken from Officer Blythe during the time the video was taken" and that Coffey did not plan "to object to the DNA experts testifying . . . in regard to the DNA results of the buccal swabs taken . . . by Officer Blythe." After admonishing Coffey about the matter, the trial court accepted Coffey's waiver of any objection to the DNA testimony. However, Coffey still objected to the recorded statement being played for the jury on the ground that the statement was not voluntarily given.

After hearing Blythe's testimony and watching the recorded statement, the trial court denied Coffey's motion to suppress, ruling that "[t]he warnings were substantially correct and the effective equivalent of the statutory warnings for video statements."[8]

## B.    Standard of Review

We review a trial court's ruling on a motion to suppress evidence for abuse of discretion and will not disturb that ruling so long as it is within the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011); *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Hutchison v. State*, 424 S.W.3d 164, 175 (Tex. App.—Texarkana 2014, no pet.).  In reviewing such a ruling, we apply a bifurcated standard of review.  *Wilson v. State*, 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).  "We approach our review with two standards, 'giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely on the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations.'" *Hutchinson*, 424 S.W.3d at 175 (quoting *Martinez*, 348 S.W.3d at 922–23); *see State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011); *Wilson*, 311 S.W.3d at 458; *Carmouche*, 10 S.W.3d at 327; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

At a suppression hearing, the trial judge is the sole trier of fact and exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *St. George v. State*, 237

[8]After finding that an accused was properly admonished of his *Miranda* and statutory rights, the trial court must also find that the accused knowingly, intelligently, and voluntarily waived those rights prior to the admission of statements made during a custodial interrogation.  TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(b) (West Supp. 2013).  Here, the trial court found that Coffey's statement was voluntarily given, but also submitted the issue of voluntariness to the jury.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 7 (West Supp. 2013).

8

S.W.3d 720, 725 (Tex. Crim. App. 2007); *Guzman*, 955 S.W.2d at 89. A trial court's ruling on a motion to suppress will be affirmed if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009) (per curiam).

### C.     Required Warnings and Waiver of Rights

"Under both the Federal constitutional standard and the Texas Confession Statute, evidence obtained as a result of a custodial interrogation is inadmissible unless the State proves the officer gave proper warnings and shows an affirmative waiver of rights by the accused." *Hutchinson*, 424 S.W.3d at 175 (footnotes omitted) (citing TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2013); *Miranda*, 384 U.S. at 444; *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008)).[9] "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney . . . ." *Miranda*, 384 U.S. at 444.

Article 38.22 of the Texas Code of Criminal Procedure precludes the use of oral statements that result from custodial interrogation absent compliance with additional procedural safeguards. TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 2(a), 3(a). Specifically, the interrogator must inform the accused that:

---

[9]The prosecution may not use statements stemming from the custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda*, 384 U.S. at 444; *Alvarado v. State*, 853 S.W.2d 17, 20 (Tex. Crim. App. 1993). In order for the *Miranda* safeguards to apply, there must be two showings: (1) the suspect must have been "in custody," and (2) the police must have "interrogated" the suspect either by express questioning or its functional equivalent. *See Rhode Island v. Innis*, 446 U.S. 291, 300–02 (1980); *Jones v. State*, 795 S.W.2d 171, 174 (Tex. Crim. App. 1990). Here, the State concedes that the statements were made as the result of custodial interrogation.

(1)     he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2)     any statement he makes may be used as evidence against him in court;

(3)     he has the right to have a lawyer present to advise him prior to and during any questioning;

(4)     if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5)     he has the right to terminate the interview at any time . . . .

TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 2(a), 3.

Unless the accused is given these admonishments or their "fully effective equivalent," an oral statement resulting from custodial interrogation is inadmissible. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(e)(2). "As long as the substance of the warnings are adequately communicated, the failure to give the warnings precisely as set forth in *Miranda* does not invalidate a subsequent confession." *Hutchinson*, 424 S.W.3d at 175 n.7 (citing *California v. Prysock*, 453 U.S. 355, 360–62 (1981); *Clark v. State*, 627 S.W.2d 693, 704 (Tex. Crim. App. 1982) (op. on reh'g)).

The State first argues that Blythe substantially complied with the requirements in Article 38.22. The transcript of the recorded statement included the following pre-interrogation warnings given by Blythe: "You have the right to remain silent, anything you say can and will be used against you in a court of law. You have the right to an attorney. If you can't afford one, one will be represented [sic] for you. You can decide at any time to exercise these rights and not answer any of my questions." These warnings substantially complied with all but the third

10

essential requirement enumerated in Article 38.22, Section 2(a). While Blythe informed Coffey that he had the right to an attorney and that one would be "represented" to him, Blythe failed to inform Coffey that he had the "right to have a lawyer present to advise him *prior to and during any questioning*."[10] *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a)(3) (emphasis added).

The United States Supreme Court wrote in *Miranda*,

> The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators. Therefore, the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today. Our aim is to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process. . . . [T]he need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires.

*Miranda*, 384 U.S. at 470–71. Blythe failed to inform Coffey of a right the United States Supreme Court has characterized as "an absolute prerequisite to interrogation." *Id.* at 471. We find that Blythe failed to substantially comply with *Miranda* and the requirements of Article 38.22. *See Prysock*, 453 U.S. 356–60.

Coffey also argues that he did not knowingly, intelligently, and voluntarily waive his *Miranda* and statutory rights. Both *Miranda* and Article 38.22 require the State to prove two distinct elements—that the prescribed warnings were given to the suspect and that the suspect waived those rights. *Miranda*, 384 U.S. at 479, *Joseph v. State,* 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). Blythe was asked to confirm that, after giving Coffey the *Miranda* warnings,

---

[10]"[W]e will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given." *Miranda*, 384 U.S. at 468.

11

Q.      he voluntarily assented by shaking his head affirmatively, yes –

A.      Yes.

Q.      -- that he understood and waived those rights?

A.      Yes, sir.

The Texas Court of Criminal Appeals has acknowledged that a defendant is not required to "explicitly" waive the *Miranda* rights, but must do so knowingly, intelligently, and voluntarily. *Joseph v. State*, 309 S.W.3d 20, 25 (Tex. Crim. App. 2010). To make such a determination we must review whether such relinquishment was the product of a free and deliberate choice, with full awareness of the nature of the right being abandoned and consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. *Id.* We have determined that the warnings did not adequately advise Coffey of his right to counsel prior to and during interrogation; therefore, he could not have intentionally waived that right.[11]

Yet, the State argues that Blythe was not required to give the *Miranda* and statutory warnings, relying on an exception in Article 38.22, which provides that the proscribed warnings "shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of

---

[11]In a concurring opinion in *Joseph*, Judge Cochran noted a "rising trend in which Texas law-enforcement officers fail to explicitly ask a suspect if he is willing to give up his *Miranda* rights and speak to them." *Joseph*, 309 S.W.3d at 28–29 (Cochran, J., concurring). Judge Cochran explains that the prosecution's burden is great when the waiver is not express. "Thus, law-enforcement officers are well advised to expressly ask a suspect to waive his *Miranda* rights so as to avoid later, protracted litigation and the very real possibility that a suspect's statement must be excluded because the totality of the circumstances are insufficient to meet the State's 'heavy burden' to show an implied waiver." *Id.* at 30 (Cochran, J., concurring).

secreted or stolen property . . . ." *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(c).  The State argues that this exception should apply because Coffey's statements obtained during the interview led them to the victim's stolen tablet computer charger.

First, because Section 3(c) only applies to the statutory warnings of Article 38.22, *Miranda* warnings were still required even if Section 3(c) were invoked by the facts of this case. *Robertson v. State*, 871 S.W.2d 701, 714 (Tex. Crim. App. 1993); *see Perillo v. State*, 758 S.W.2d 567, 575 (Tex. Crim. App. 1988).  Second, the State's argument that Section 3(c) applies is simply unsupported by the record.

In an attempt to demonstrate Section 3(c)'s applicability, the State claims, "[Coffey] informed the police during his interview that the charger to the stolen tablet was still in Daingerfield at the motel."  The State continues, "The presence of whereabouts of the charger was unknown until defendant revealed during his video statement that the charger was still at the Daingerfield motel."  Contrary to the State's assertions, Coffey claimed that the charger that was in his motel room was *his* charger, not the charger for the tablet computer that he allegedly found on the ground.  Further, another officer plainly told Blythe during the interview, "[T]here's a charger for [the tablet] in his room."  Coffey's statements did not assert facts that were later found to be true and did not lead officers to the allegedly secreted or stolen property; the charger had already been found.  Therefore, the Section 3(c) exemption does not apply.

Because Coffey was not provided with the required *Miranda* and statutory warning that he had the right to have an attorney present during questioning and could not have waived that

13

right knowingly, intelligently, and voluntarily, the recorded statement was inadmissible. We now address whether the error in admitting the statement was harmful.

### D.     Harm

In a criminal case, the erroneous denial of a motion to suppress a statement taken in violation of *Miranda* is constitutional error subject to review under the standard set forth in Rule 42.2(a) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 44.2(a); *Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003). Reversal is required unless we can determine, beyond a reasonable doubt, that the failure to suppress Coffey's statement did not contribute to the jury's verdict. TEX. R. APP. P. 44.2(a); *see Snowden v. State*, 353 S.W.3d 815, 818 (Tex. Crim. App. 2011); *Jones*, 119 S.W.3d at 777.

The emphasis of a harm analysis pursuant to Rule 44.2(a) should not be on the propriety of the outcome of the trial. *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). "[T]he question for the reviewing court is not whether the jury verdict was supported by the evidence. Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict." *Id.* In reaching that decision, we may consider (1) whether the recorded statement was cumulative of other evidence, (2) the importance of the recorded statement to the State's case, (3) the probable weight a juror would place upon the recorded statement, (4) the presence or absence of evidence corroborating or contradicting the recorded statement on material points, and (5) the overall strength of the prosecution's case. *See id.*; *Jones*, 119 S.W.3d at 778.

14

"In situations where a recording is improperly admitted, yet the recording is cumulative of . . . properly admitted live testimony on the same issue, courts often disregard the error . . . ." *Land v. State*, 291 S.W.3d 23, 29 (Tex. App.—Texarkana 2009, pet. ref'd). "Redundancy from properly admitted or nonchallenged evidence does not cure or moot the original error. It is, however, a consideration in our harm analysis." *Id.* (citing *Matz v. State*, 14 S.W.3d 746, 747 (Tex. Crim. App. 2000)).

Here, the State continued Blythe's direct examination after it played the recorded statement. During the examination, Blythe testified that Coffey (1) initially denied knowing the victim, (2) initially denied having sexual relations with anyone during the morning of the victim's attack, (3) later admitted that his acquaintances were involved, (4) admitted that he had consensual oral sex with the victim, (5) denied beating the victim, (6) admitted that he had injuries to his hands, arms, elbow, and scratches on his forehead, and (7) claimed that the injuries on his body were caused by a fall he sustained after getting drunk and losing his balance.

Coffey complained of the admission of the substantive statements he made during the interview. Blythe's testimony, admitted without objection, highlighted the important substantive statements made by Coffey during his interview and, thus, was cumulative of the recorded statement. Moreover, (1) the recorded statement was not essential to the State's case because it did not contain a confession of the alleged crime, (2) because the statement contained no confession, the probable weight a juror would have placed it would have been slight, (3) the jury had already heard the testimony of the victim and Josh White identifying Coffey as the perpetrator, (4) photographs suggesting that Coffey had been involved in a recent struggle were

15

also admitted without objection, (5) the jury later learned that the DNA analysis of samples collected from the black shirt and from underneath the victim's fingernails failed to exclude Coffey as a contributor of the DNA, and (6) overall, the State's case against Coffey was strong.

Here, we are confident, beyond a reasonable doubt, that the admission of Coffey's recorded statement did not contribute to the conviction. *Scott*, 227 S.W.3d at 690. Therefore, we find that the error in admitting Coffey's recorded statement was harmless and overrule Coffey's last point of error.

## III. Conclusion

The judgment of the trial court is affirmed.


Jack Carter
Justice


Date Submitted: May 8, 2014
Date Decided: June 13, 2014

Publish

16