# NO. 12-21-00113-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *EMMANUEL PARAMO GARCIA,* *APPELLANT* | *§* | *APPEAL FROM THE 369TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | *§* | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Emmanuel Paramo Garcia appeals his conviction for aggravated assault with a deadly weapon. In three issues, Appellant challenges the denial of his motion to suppress, contends the trial court created undue prejudice and commented on the weight of the evidence by serving popcorn to the jury in the courtroom while the jury watched a video of his custodial interrogation, and argues that the trial court abused its discretion by admitting testimony regarding a prior bad act. We affirm the trial court's judgment.

## BACKGROUND

Appellant was charged with murder. The indictment alleged that Appellant either (1) with intent to cause serious bodily injury to the victim, committed an act clearly dangerous to human life by shooting the victim, or (2) intentionally or knowingly caused the victim's death by shooting the victim with a firearm.

Appellant filed a pretrial motion to suppress, in which he argued that his statements to law enforcement officers of Hidalgo County Sheriff's Department, Cherokee County Sheriff's Department, Texas Rangers, and any other persons acting on their behalf should be suppressed because they were involuntary and coerced. In addition, Appellant asserted that he did not knowingly and intelligently waive his right to counsel, and he contended that his statements were

tainted by his "illegal and unlawful detention and arrest[.]" Appellant also asserted that his statements were taken without the safeguards required by Article 38.22 of the Texas Code of Criminal Procedure, and he maintained that the admission of his statements would violate his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, "Article I, Section[s] 9 and 10 of the Texas Constitution[,] and Articles 1.05 and 38.23 of the Texas Code of Criminal Procedure."

At the hearing on the motion to suppress, Appellant testified that Texas Ranger Nicholas Castle and a detective from Cherokee County interviewed him at the Hidalgo County jail, and he gave a statement to them in Spanish. Appellant explained that an interpreter named Leonardo Quintana was also present. Appellant explained that he did not know that Quintana was a major crimes investigator for the Hidalgo County Sheriff's Office. According to Appellant, Quintana read his *Miranda* warnings to him, and Appellant indicated to Quintana that he understood; however, Appellant testified that he did not understand some of the words. Appellant testified that he did not tell Quintana he did not understand. According to Appellant, Quintana did not ask Appellant whether he intelligently, knowingly, and voluntarily waived each right before he gave a statement. Appellant testified that he understood that he could have requested an attorney, but he denied understanding that any statements he made could be used against him. Appellant stated that Quintana never showed him a document in Spanish that set forth his *Miranda* rights.

According to Appellant, Quintana sometimes sought further explanations and asked additional questions about the offense. Appellant testified that the interview continued for approximately two hours, and he never told officers that he did not understand his rights or that he did not want to speak with them. Appellant testified that during his statement, the officer rose from his seat, hit the table with his fist, and told Appellant to stop lying. Appellant explained that he thought the officer was going to "grab" him, so Appellant believed he "had to tell him whatever he wanted to hear." Appellant testified that Castle intimidated and frightened him by using profanity and loudly calling him a liar while standing up, facing toward Appellant. According to Appellant, Castle said that if Appellant did not tell the truth, he could go to the penitentiary for life.

Quintana testified that he is a criminal investigator with the Hidalgo County Sheriff's Office. Quintana explained that he brought Appellant into the interview room and read him his *Miranda* rights in Spanish verbatim from a sheet of paper provided byCastle. Quintana explained

2

that he translated for the investigating officers and also asked Appellant questions and translated his questions for the other officers. According to Quintana, Appellant stated that he understood his rights and gave a statement, and Appellant never indicated that he did not understand his rights or asked to end the interview. Quintana did not ask Appellant if he waived his rights before his statement began. Quintana testified that Appellant was sometimes preparing a response before Castle finished asking a question in English, so "it was evident that [Appellant] did speak some English or at least understood it."

Quintana explained that none of the law enforcement officials used any force against Appellant or threatened to use force, and they did not coerce Appellant. Quintana testified that Ranger Castle accused Appellant of lying, used profanity, and struck the table, but Castle did not make any threatening motions. Quintana explained that Appellant changed his story after Castle did so. According to Quintana, Castle told Appellant he would terminate the interview and walk out if Appellant did not tell him the truth. A video recording of Appellant's statement was admitted into evidence and published to the trial court.

Castle testified that he interviewed Appellant, and Quintana assisted. According to Castle, Quintana warned Appellant of his *Miranda* rights using a form written in Spanish, and Appellant waived his rights and gave a voluntary statement without requesting an attorney. According to Castle, Quintana translated and asked questions. Castle testified that the investigating officers did not specifically ask Appellant whether he waived his rights. Castle explained that Appellant never indicated that he did not understand anything about the process. Castle testified that he questioned Appellant's honesty at least twice, used profanity, and told Appellant he would end the interview if he did not tell the truth. Castle admitted pounding the table "to make sure that [Appellant] understood the severity of what we were investigating as well as [to] make the point clear to him that I realized there were discrepancies in the statements he was giving." Castle explained that Appellant nevertheless continued with the interview, and he opined that the interview was voluntary in accordance with both *Miranda* and Article 38.22 of the Texas Code of Criminal Procedure.

When asked whether he disagreed with Appellant's testimony that he did not waive his rights, Castle stated that he disagreed, and he testified that Appellant indicated that he understood his rights and "moved forward [with the interview] even when offered the opportunity several times that if he wasn't going to tell the truth, we would terminate the interview, designating

3

locations, quite frankly, that he wouldn't have had any knowledge of had he not been involved, and he continued to participate in the interview." Castle denied using physical contact or force, and he testified that based on the totality of the circumstances, he does not believe Appellant was intimidated. Castle agreed that the ***Miranda*** warnings document from which Quintana read does not reference waiving rights. The trial court denied the motion to suppress, and the case proceeded to trial.

At trial, evidence showed that the victim, who was in a sexual relationship with the wife of Appellant's brother, Maximino Garcia, was found dead inside a vehicle. A forensic pathologist testified that the victim was shot fourteen times and suffered blunt force trauma, and the cause of his death was multiple gunshot wounds. After a search warrant was executed at Maximino's residence, the authorities recovered a steel pipe. Investigating officers became aware of another crime scene, where items consistent with the damage observed on the vehicle the victim was driving, as well as skid marks and a 9mm cartridge case, were found. Castle and a detective traveled to the Hidalgo County Sheriff's Office to interview Maximino and Appellant and requested assistance from an interpreter. Castle explained that upon attempting to question Maximino, Maximino requested an attorney, so the officers terminated the interview and asked to interview Appellant, and after being read his rights in Spanish, Appellant waived his rights and gave a statement. Castle testified that Maximino pleaded "guilty" to murdering the victim and was sentenced to fifty years of confinement.

During Castle's testimony, the State offered the video recording of Appellant's custodial interview. The trial judge stated as follows to the jury:

> Ladies and gentlemen, this is a long video that we're going to work through, so I'm going to give you multiple breaks during it. We're also, since this is about as long as a movie, and I'm not joking, we're literally popping popcorn right now that we're going to bring out to kind of help you maintain your focus[.]

After the video played for approximately eleven minutes, defense counsel moved for a mistrial. Defense counsel objected, "Judge, this is my client's murder trial. I'm going to object to popcorn being distributed to the jury as if we were watching a Netflix movie. I think that is just completely improper. I move for a mistrial right now." The State responded, "that's not any different than coffee and doughnuts being provided by the county. And, also, it wasn't done at the time. It's waived." After stating that he was trying to help both parties by keeping the jury alert, the trial

4

judge denied the motion for mistrial. Defense counsel reiterated, "My client's life hangs in the balance, and I do not want popcorn to be in this courtroom at all. Refreshments may be served outside, they can be served during breaks, but not during watching a confession video where a man was killed, and my client is talking about that."

Castle subsequently testified that when he interviewed Jose Garcia, the brother of Maximino and Appellant, Jose indicated that he and Appellant had no idea that Maximino planned to shoot the victim. Deputy Ken McClure of the Cherokee County Sheriff's Office testified that a few days before the murder, the victim called the sheriff's office regarding two individuals who fired shots at his vehicle, and he identified the individuals as Maximino and Appellant. McClure testified that on that occasion, he arrested Appellant for criminal trespass, and he arrested Maximino for deadly conduct, criminal mischief, and criminal trespass. Defense counsel objected to McClure's testimony under Rules 403 and 404(b) of the Texas Rules of Evidence and moved for a mistrial. The prosecutor argued that the evidence was admissible because it was relevant to "motive, plan, knowledge, intent, and under the law of parties to show [that] the defendant knew his brother did have a gun and had used it[.]" The trial judge overruled defense counsel's objection and motion for mistrial.

Defense counsel argued in his closing that Maximino murdered the victim, pleaded guilty to doing so, and received a punishment of fifty years of confinement, and he conceded that Appellant "was there, and he beat the windshield[,]" and he drove the truck containing the victim's body from the scene after Maximino told him to do so. Defense counsel also argued that Appellant did not harm the victim. Defense counsel argued that "[t]he only thing that I can say that my client has done here is aggravated assault with a deadly weapon."

The trial court instructed the jury regarding the law of parties and conspiracy, as well as the lesser-included offense of aggravated assault with a deadly weapon. The jury acquitted Appellant of murder but found Appellant guilty of the lesser-included offense of aggravated assault with a deadly weapon and assessed punishment at twenty years of confinement. This appeal followed.

## MOTION TO SUPPRESS

In issue one, Appellant challenges the denial of his motion to suppress. Specifically, Appellant argues that (1) he did not thoroughly understand his rights, and therefore he did not

knowingly, intelligently, and voluntarily waive them, and (2) his statement was involuntary because Castle intimidated or frightened him by standing up, pounding the table, using profanity, and calling him a liar.

**Standard of Review and Applicable Law**

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010). We give almost total deference to the trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, but we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008); *see also Kerwick*, 393 S.W.3d at 273. We must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses, particularly when the motion to suppress challenges the voluntariness of a confession. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007). Therefore, a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We must uphold the trial court's ruling on a motion to suppress if the ruling was supported by the record and was correct under any theory of law applicable to the case. *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

Before any custodial questioning, the accused must be warned that he has the right to remain silent, that any statement he makes may be used as evidence against him, and that he has the right to have an attorney present. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966); *Coffey v. State*, 435 S.W.3d 834, 841 (Tex. App.—Texarkana 2014, pet. ref'd); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22 § 2(a)(1)-(5) (West 2018). In addition, for an oral statement by the accused to be admissible as evidence, the accused must knowingly, intelligently, and voluntarily waive the rights set out in the warning. TEX. CODE CRIM. PROC. ANN. art. 38.22 §§ 2(b), 3(a) (West 2018). The State bears the burden of establishing by a preponderance of the evidence that the accused knowingly, intelligently, and voluntarily waived his rights under *Miranda* and Article 38.22. *Leza v. State*, 351 S.W.3d 344, 349, 351 (Tex. Crim. App. 2011). An

6

accused's waiver must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception[,]" and it must be made "with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. at 349 (quoting *Colorado v. Spring*, 479 U.S. 564, 573, 107 S. Ct. 851, 93 L. Ed. 2d 954 (1987)). A valid waiver can be either express or implied by the accused's conduct; that is, "neither a written nor an oral express waiver is required." *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010) (quoting *Watson v. State*, 762 S.W.2d 591, 601 (Tex. Crim. App. 1988)). "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis v. Thompkins*, 560 U.S. 370, 384, 130 S. Ct. 2250, 2262, 176 L. Ed. 2d 1098 (2010); *Leza*, 351 S.W.3d at 354 n.33. Generally, "the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis*, 560 U.S. at 385, 130 S. Ct. at 2262. A trial court does not abuse its discretion if a finding of implied waiver is supported by the totality of the circumstances, including the background, experience, and conduct of the accused. *Leza*, 351 S.W.3d at 353; *Watson*, 762 S.W.2d at 601.

"A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion[.]" TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2005). A statement may be deemed involuntary due to failure to comply with the requirements of Article 38.22 of the Texas Code of Criminal Procedure, failure to comply with the requirements of *Miranda*, or if it was not freely given due to coercion, force, or improper influence. *Wolfe v. State*, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996). A confession is involuntary "only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). In determining a statement's voluntariness, courts must examine the totality of the surrounding circumstances. *Delao*, 235 S.W.3d at 239 (citing *Arizona v. Fulminante*, 499 U.S. 279, 285-86, 111 S. Ct. 1246, 1252, 113 L. Ed. 2d 302 (1991)); *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).

**Analysis**

Both the video recording and the testimony of Castle and Quintana at the suppression hearing reflect that Quintana, who was in uniform, read Appellant's *Miranda* rights to him before substantive questioning began,[1] and that Appellant verbalized his understanding of those rights. In addition, both the video recording and the testimony reflect that Appellant was then interviewed for approximately two hours in a room at the Hidalgo County jail. The video recording reflects that Appellant was given a bottle of water during questioning, and both Castle and Quintana testified that Appellant never asked for an attorney or requested that the interview end. The video recording and the testimony of Castle and Quintana also indicate that Appellant was questioned in Spanish, and that Appellant never told the officers that he did not understand his rights. Although Appellant testified that Quintana did not show him the paper on which his *Miranda* rights were written in Spanish, the video recording reflects that the paper was on the Appellant's side of the table, in front of both Quintana and Appellant, and in close proximity to Appellant. In addition, the video recording and testimony reflect that after verbalizing his understanding of his rights, Appellant proceeded to answer questions from Castle and Quintana.

Considering the totality of the circumstances, we conclude that Castle's using profanity, calling Appellant a liar, and pounding on the table do not establish coercion or intimidation, and the record supports the trial court's determination that Appellant's statement was voluntary. *See Wyatt v. State*, 23 S.W.3d 18, 23-25 (Tex. Crim. App. 2000) (rejecting the defendant's claim that his confession was coerced because the interrogating officers called him a liar and "talked short" to him); *Lane v. State*, No. 01-11-00055-CR, 2012 WL 1454481, at *4 (Tex. App.—Houston [1st Dist.] Apr. 26, 2012, no pet.) (mem. op., not designated for publication) (rejecting the defendant's claim that his confession was coerced because interrogating officers called him a liar and used profanity); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.21; *Delao*, 235 S.W.3d at 239; *Creager*, 952 S.W.2d at 856. Furthermore, Appellant was verbally advised of his rights and could see his rights in Spanish on the form, and Appellant then proceeded to allow investigating officers to interview him for approximately two hours. On this record, we conclude that the trial court did not abuse its discretion by impliedly finding that Appellant waived his rights. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22; *Leza*, 351 S.W.3d at 349, 351. In sum, viewing the evidence in the light

---

[1] The video recording shows that Castle only asked Appellant his name and date of birth before Quintana read Appellant his *Miranda* rights.

most favorable to the trial court's ruling and giving appropriate deference to the trial court's role in judging the credibility of witnesses, we conclude that the trial court did not abuse its discretion by denying Appellant's motion to suppress. *See **Kelly***, 204 S.W.3d at 818. Accordingly, we overrule issue one.

### SERVING POPCORN TO THE JURY IN THE COURTROOM

In issue two, Appellant argues that the trial court's popping of popcorn and giving it to the jurors for consumption during publication of the video of his interrogation was unduly prejudicial and was tantamount to a comment on the weight of the evidence. Specifically, Appellant asserts that popcorn is "most commonly related to scenarios of entertainment[,]" and that by giving the jury popcorn during the presentation of video evidence in the courtroom, the trial court sent the message to the jury that the video was "something to be enjoyed and to watch as entertainment[]" rather than "significant evidence in [a] murder trial[.]"[2]

Assuming without deciding that Appellant properly preserved this issue for appeal and that the trial court erred by serving popcorn to the jury in the courtroom, such a non-constitutional error is subject to a harm analysis pursuant to Rule 44.2(b) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 44.2(b) (providing that an error that does not affect a defendant's substantial rights must be disregarded). A substantial right is affected when the alleged error had a "substantial and injurious effect or influence in determining the jury's verdict." ***King v. State***, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We must affirm the conviction if, after examining the record as a whole, "we are left with the fair assurance that the [alleged] error did not influence the jury or influenced the jury only slightly." ***Wilson v. State***, 90 S.W.3d 391, 393 (Tex. App.—Dallas 2002, no pet.). We must consider all the evidence, the nature of the evidence supporting the verdict, and

---

[2] In response, the State argues that trial courts "may provide coffee, water, doughnuts[,] and other refreshments[,]" and "[p]opcorn is no different." We reject the State's argument. Serving refreshments to jurors in the courtroom during the presentation of evidence is vastly different than providing refreshments in the jury room or elsewhere during breaks. To address concerns regarding the jury's stamina and focus during trial, it is a far better practice to allow more frequent breaks and to provide refreshments to the jury outside the courtroom during those breaks. As the United States Supreme Court has noted in another context, it is "essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country[.]" ***Illinois v. Allen***, 397 U.S. 337, 343, 90 S. Ct. 1057, 1061, 25 L. Ed. 2d 353 (1970) (addressing the importance of courtroom dignity and decorum in the context of handling a disruptive defendant). "The courtroom's formal dignity . . . reflects the importance of the matter at issue, guilt or innocence, and the gravity with which Americans consider the deprivation of an individual's liberty through criminal punishment." ***Deck v. Missouri***, 544 U.S. 622, 631, 125 S. Ct. 2007, 2013, 161 L. Ed. 2d 953 (2005).

the character of the alleged error to determine if the alleged error substantially affected Appellant's rights. *See id*. (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)).

As discussed above, the jury acquitted Appellant of murder and instead found Appellant guilty of the lesser-included offense of aggravated assault with a deadly weapon. Considering the entire record, including the nature of the evidence supporting the verdict and the nature of the alleged error, we have fair assurance that the serving of popcorn during publication of the video recording of Appellant's interrogation did not influence the jury or influenced the jury only slightly, and did not affect Appellant's substantial rights. *See King*, 953 S.W.2d at 271; *Wilson*, 90 S.W.3d at 393-94; *see also* TEX. R. APP. P. 44.2(b). Accordingly, we overrule issue two.

## ADMISSION OF EVIDENCE OF OTHER CRIMES

In issue three, Appellant challenges the admission of McClure's testimony regarding his arrest for criminal trespass on another occasion, when Appellant was with Maximino when Maximino fired shots at the victim's vehicle. Appellant argues that the admission of said evidence violated Rule 404(b) of the Texas Rules of Evidence.

### Standard of Review and Applicable Law

We review a trial court's admission of extraneous offenses or acts under an abuse of discretion standard. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). We must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).

Rule 404(b) of the Texas Rules of Evidence provides that evidence of a crime, wrong, or other act is not admissible to prove a person's character to show that the person acted in accordance with the character on a particular occasion, but it may be admissible for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b). The list of enumerated purposes for which an extraneous offense or act may be admissible under Rule 404(b) is neither exclusive nor exhaustive. *Montgomery*, 810 S.W.2d at 388. Evidence of extraneous acts may be admissible if it has relevance apart from its tendency to prove a person's character to show that he acted in conformity therewith. *Id*. at 387. However, the fact that evidence of extraneous acts is introduced for a purpose other than character conformity does not, standing alone, make the evidence admissible. *See Webb*

***v. State***, 36 S.W.3d 164, 180 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Proffered evidence must also be relevant to a fact of consequence in the case. ***Id***. Evidence is relevant if it tends to make the existence of any fact of consequence more probable or less probable than it would be without the evidence. TEX. R. EVID. 401.

Rule 403 of the Texas Rules of Evidence provides as follows: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." ***Montgomery***, 810 S.W.2d at 389. Once a trial court determines that extraneous offense evidence is admissible under Rule 404(b), the trial court must, upon proper objection by the opponent of the evidence, weigh the probative value of the evidence against its potential for unfair prejudice. ***Id***.; *see* TEX. R. EVID. 403. A Rule 403 analysis must balance the following:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

***Gigliobianco v. State***, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); *see also* ***Erazo v. State***, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). However, if the only value of extraneous offense evidence is to show character conformity, the balancing test required by Rule 403 is obviated because "the rulemakers hav[e] deemed that the probativeness of such evidence is so slight as to be 'substantially outweighed' by the danger of unfair prejudice *as a matter of law*." ***Montgomery***, 810 S.W.2d at 387 (quoting ***United States v. Beechum***, 582 F.2d 898, 910 (5th Cir. 1978)). We will not overturn a conviction if, after examining the record as a whole, we have fair assurance that the allegedly erroneous admission of extraneous-offense evidence either did not influence the jury or had but slight effect. ***Taylor v. State***, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008).

**Analysis**

Based upon the record as a whole, we conclude that the extraneous offense evidence was relevant to show motive, intent, plan, and knowledge, and the trial court therefore did not err by admitting the evidence. *See* TEX. R. EVID. 404(b)(2); ***Montgomery***, 810 S.W.2d at 387. In addition,

we conclude that the trial court properly performed the balancing test required by Rule 403. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641-42. Moreover, the trial court did not err by implicitly determining that the evidence did not tend to suggest deciding the case on an improper basis or confuse or distract the jury, and the evidence did not consume an inordinate amount of time or merely repeat previously admitted evidence. *See Gigliobianco*, 210 S.W.3d at 641-42. After examining the record as a whole, we have fair assurance that the admission of extraneous-offense evidence either did not influence the jury or had but slight effect. *See Taylor*, 268 S.W.3d at 592. Accordingly, we overrule issue three.

### DISPOSITION

Having overruled each of Appellant's three issues, we ***affirm*** the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered August 24, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 24, 2022**

**NO. 12-21-00113-CR**

**EMMANUEL PARAMO GARCIA,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 369th District Court
of Cherokee County, Texas (Tr.Ct.No. 20427)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*